WALLACE K. HOWARD *vs.* EDWARD BEAN.

Suffolk. February 4, 1931. — March 11, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Contract,* Validity, For the procuring of life insurance. *Insurance,* Agent or broker. *Broker,* Insurance.

At the trial of an action for breach of a contract whereby the plaintiff agreed to devote his best efforts to procure life insurance for the defendant, who had had difficulty in securing such insurance, and the defendant agreed to follow "exactly" the procedure suggested by the plaintiff, including all special examinations by doctors and specialists, and to take whatever insurance the plaintiff should be able to obtain for him up to a certain amount, it was found that the plaintiff was a duly licensed agent of an insurance company, but was not licensed as a broker; that, after procuring for the defendant insurance in that company for a portion of the amount specified in the contract, he did everything required of him under the contract to procure insurance for the remaining amount from a second insurance company, for which he then was not an agent; that the defendant broke the contract by refusing to undergo a medical examination and to accept such further insurance; and that the plaintiff procured his appointment and license as an agent of the second company previous to the defendant's refusal. *Held,* that the plaintiff had acted as either an insurance broker or an insurance agent in violation of G. L. c. 175, §§ 162 *et seq.,* and could not recover.

CONTRACT. Writ in the Municipal Court of the City of Boston dated January 13, 1930.

Upon removal to the Superior Court, the action was heard by *Cox,* J., without a jury. Material evidence, and findings and a ruling by the judge are stated in the opinion. He reported the action for determination by this court.

*R. P. Baldwin,* (*F. X. Daly* with him,) for the plaintiff.

*L. Wyman,* for the defendant.

CROSBY, J. This action for breach of contract was heard by a judge of the Superior Court, who made the following findings of fact: During the year 1929 the plaintiff was a duly licensed insurance agent for the John Hancock Life Insurance Company, the New England Mutual Life Insurance Company and the Massachusetts Mutual Insurance Company. He was not licensed as an insurance broker. He had had some success in obtaining insurance, as so called substandard risks, for persons who had previously been rejected as uninsurable. The defendant, a man fifty-five years of age, had been rejected by various insurance companies several months previously, and had $50,000 of insurance cancelled by the Metropolitan Life Insurance Company. He had recently obtained a $5,000 policy from the United Life and Accident Insurance Company of Concord, New Hampshire, at an advanced rate, and desired to obtain more insurance. An agent of the New York Life Insurance Company, who was an acquaintance of the defendant and knew that the plaintiff had had experience with substandard risks, introduced him to the defendant. On or about August 12, 1929, the defendant entered into an agreement with the plaintiff whereby, in consideration of the plaintiff's promise to devote his best efforts to procure insurance for the defendant, the latter was to follow "exactly" the procedure suggested by the plaintiff, including all special examinations by doctors and specialists, and to take whatever insurance the plaintiff should be able to obtain for him up to about $50,000. There was at no time any agreement that the plaintiff should be paid for his services by the defendant. The parties contemplated that the plaintiff should receive a commission from the company or companies, if any, issuing the insurance. The plaintiff discovered that the cause of the defendant's rejection by various insurance companies had been a report of angina pectoris. Thereafter, at the plaintiff's suggestion, the defendant was examined by a heart specialist at the Massachusetts General Hospital, at whose suggestion an X-ray picture of the heart region was made. The report of this specialist showed that, in his opinion, the defendant did

not have angina pectoris. This report with other medical data was submitted by the plaintiff to the John Hancock Life Insurance Company. The company after examination of the defendant agreed to accept him as a substandard risk to the extent of $20,000, and on September 11, 1929, issued a policy for that amount upon his life at an advanced rate. The defendant paid the premium, and the plaintiff received a commission from the company.

The trial judge further found that the plaintiff devoted his best efforts to the performance of his agreement. In October, 1929, the plaintiff, in attempting to obtain the additional insurance requested by the defendant, went to Hartford and New York to place the defendant's case before the home offices of several insurance companies, including the Aetna Life Insurance Company. The terms on which this company was willing to insure him, if he were found to be insurable, were more favorable than those he had received from the John Hancock company. On October 11, 1929, the defendant was examined by the medical examiner of the Aetna company, and gave the general agent of the company his check for $2,871.05, the amount of the first premium on a policy for $35,000. The plaintiff filed the application on behalf of the defendant, signing the application in the blank designated "sub-agent." At the same time the plaintiff filed with the company an application to be appointed an agent of that company, and on October 16 he was duly licensed as an insurance agent of the Aetna company. After an examination of the defendant by the medical examiner of the company, the latter recommended his acceptance as a substandard risk, in accordance with the terms of the application. On October 22, 1929, as the result of a request from the home office of the company made through its general agent, the plaintiff arranged for a further examination of the defendant by the heart specialist of the Massachusetts General Hospital to be made on October 24, 1929, at 1:30 P.M., to explain a seeming discrepancy between the heart measurements made by this specialist and those made by the medical examiner of the Aetna company. On the day fixed for

such examination, at the defendant's suggestion the plaintiff called for him at his place of business at 1 P.M. to accompany him to the doctor's office, but the defendant refused to go and stated that he would take no further examination and he did not want the insurance. The judge found that the plaintiff did everything required of him under the agreement and that the defendant violated its terms. The defendant's application to the Aetna company was denied, and the amount paid by him on account of the first premium was repaid to him.

The ultimate findings and ruling by the judge were as follows: "Upon the foregoing facts I find that the plaintiff was acting as an insurance broker and was not duly licensed as such; and I therefore rule that the plaintiff cannot recover in this action." By agreement of the parties the case was reported upon the following stipulation: "If this finding and ruling are right judgment is to be entered for the defendant; If either is wrong as matter of law, judgment is to be entered for the plaintiff in the sum of $1,500, unless, upon the foregoing facts, the plaintiff cannot recover."

G. L. c. 175, § 162, provides in the first paragraph as follows: "Whoever, for compensation, not being the duly licensed insurance agent of the company in which any policy of insurance . . . is effected . . . contracts for a person other than himself, shall be an insurance broker." The agreement between the parties was entered into on August 12, 1929. Early in October the plaintiff endeavored to place insurance with the Aetna Life Insurance Company; he was not then an agent of the company and did not become such until October 16, 1929. The second paragraph of § 162 provides that "Whoever, for compensation, not being a duly licensed insurance broker . . . solicits insurance on behalf of any company, or transmits for a person other than himself an application for or a policy of insurance . . . or offers or assumes to act in the negotiation of any such policy . . . shall be an insurance agent within the intent of this chapter, and shall thereby become liable to all the duties, requirements, liabilities and penalties to which an agent of such

company is subject." Section 163 provides in part as follows: "Whoever, not being a duly licensed insurance broker . . . acts as an insurance agent as defined in the preceding section, without such license . . . shall be punished by a fine of not less than twenty nor more than five hundred dollars."

In *Pratt* v. *Burdon*, 168 Mass. 596, the plaintiff sought to recover upon a contract by which he was to receive one half of the commissions the insurance agent would receive for the first year of the existence of policies upon the lives of two persons, in consideration of the plaintiff furnishing information which would lead to such insurance. The case was decided under St. 1887, c. 214, which contained provisions similar to those herein referred to. In that case it was said by Knowlton, J., at pages 597–598: "The sole question is whether the plaintiff's act in aiding the defendant to effect insurance upon these lives by furnishing information upon a contract for pay is to be deemed an act of an insurance broker or an insurance agent within the meaning of the statutes. As throwing light upon the transaction, it is an important fact that the plaintiff was engaged in the business of negotiating insurance. What he did in his transaction with the defendant was plainly within the language of the statutes. For a compensation he aided in effecting insurance for a person other than himself." This case in principle governs the case at bar.

Under the terms of the report the plaintiff cannot recover if he was acting as either insurance broker or insurance agent. He was acting as one or the other. It is unnecessary to consider his precise capacity.

*Judgment for the defendant.*