Golder *v.* Rabinowitz, Appellant, et al.

574

Argued October 28, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Arthur S. Arnold,* with him *Eugene D. Salus,* for appellant.

*Abraham Wernick,* for appellee.

OPINION BY BALDRIGE, J., February 26, 1937:

This action was begun by an attachment under the Act of 1869, March 17, P. L. 8. The plaintiff sought to recover commissions alleged to be due from the defendant on renewal payments of premiums on policies of

life insurance issued by the United States Life Insurance Company, the garnishee, and also asked for an accounting. He obtained a verdict, in the sum of $597.39, but no mention was made therein whether he was entitled to an accounting. Judgment was entered thereafter, and defendant appealed.

The plaintiff, in his amended statement of claim, averred that during the month of August, 1928, he and defendant, who was the general agent and manager of the United States Life Insurance Company at Philadelphia, entered into an oral agreement, whereby plaintiff was to become a sub-agent of the defendant and receive a certain portion of the first year's premiums on policies he solicited, and a commission of five per cent on all renewal premiums commencing with the second year and continuing for nine years, provided the minimum amount of insurance obtained by plaintiff during any one year should total $25,000; that after the oral agreement was entered into, the defendant, on August 24, 1928, submitted to him a written agreement, representing that it contained all the terms and provisions of the oral agreement; that he reads and writes English with great difficulty and as he had a long-standing friendship with the defendant he reposed the utmost confidence in him and requested that the contents of the written contract be read to him before he executed it; defendant read to him that the commissions for renewals were to cover the nine subsequent years' renewal premiums and thereupon the contract was signed in triplicate, one copy of which was to be given plaintiff, but defendant advised him that he would keep it for him in his safe; that he never received a copy of the agreement and was unaware that the nine years were omitted from the written agreement until his attorney obtained a photostatic copy thereof about the time this suit was in-

stituted, to wit, December 13, 1934; that his attorney failed to notice when he filed the original statement of claim that the agent did not include renewal commissions for nine years, and, as a result, plaintiff's amended statement was filed.

Plaintiff averred further that for the quarter "dated August 1, 1934," defendant had received from the United States Life Insurance Company, on behalf of the plaintiff, $57.00, and for the quarter "dated November 1, 1935," $50.42, making a total of $107.42; that in addition thereto he was entitled to an accounting from the defendant as to any and all renewal commissions which the defendant had received since November 1, 1934, up until the date of the filing of the amended statement of claim (July 16, 1935), as well as any and all renewal commissions that the defendant was entitled to receive from the United States Life Insurance Company, on behalf of the plaintiff, up until the date of the trial and thereafter for the balance of nine years, beginning with the second year from the date of the writing of such insurance and whatever amounts may appear to be due the plaintiff after such accounting is had, in accordance with the oral agreement entered into; that as defendant fraudulently omitted from the written agreement the provision for payment of renewal commissions for nine years, plaintiff further asked the court to make it conform to the terms and provisions of the oral agreement.

The affidavit of defense denied the fraud alleged, and averred that the written contract was the sole and whole agreement, and that the plaintiff had been paid all the money due him.

The evidence introduced at the trial showed that many of the policies upon which plaintiff claimed commission had been issued about three months before he became an agent under the alleged contract and before

he had a license; that commissions on the renewal premiums were paid to plaintiff according to the terms of the written agreement, until the defendant severed his connection with the United States Life Insurance Company, and that thereafter he refused to pay commissions on renewals to plaintiff on the ground that the contract between them had been terminated. We think the proof of payments of these premiums by defendant was not important if they were mistakenly made. If further payments are not legally due, he is not obliged to make them. Defendant testified at one time that his employment with the insurance company had terminated in April, and at another that it was in May, 1934.

The written agreement contained a schedule of commissions, providing for a certain per cent the first year, which varied according to the character and amount of a policy, and "Renewal for Subsequent Years 5%." It also provided as follows:

"This agreement is made for an indefinite period but may be terminated on ten days' notice by either party hereto and unless so terminated or as provided in 'Requirements and Provisions' on the reverse side hereof shall be terminated by the death of the party of the first part or by the termination of the contract made by the Company with the party of the first part."

Four questions involved in this appeal deserve consideration:

1. Is the plaintiff entitled to recover commissions on policies written before he was licensed as an agent?

2. Was the plaintiff entitled to recover commissions which became due between the date suit was commenced and the date of the trial?

3. Was the plaintiff entitled to a money judgment?

4. Was the testimony offered by the plaintiff sufficient to change the provisions of the written contract?

1. The plaintiff's amended statement alleged that "the plaintiff was, in August, 1928, and still is, a registered licensed insurance agent and broker." This was not denied by the defendant. It appeared from testimony offered by plaintiff that the majority of the commissions alleged to be due were from premiums on policies written for members of the Old Friends Society through his influence, prior to August, 1928, and at a time when, under his own testimony, he did not have a license to sell insurance.

The appellee contended that his failure to have a license was a matter defendant failed to set up in his affidavit of defense which precluded him from raising it at the trial. Plaintiff, in his statement of claim, did not aver that any commissions were due on policies issued prior to August 24, 1928. There was no reason, therefore, for the defendant, in his affidavit of defense, to aver plaintiff's failure to procure a license prior to that time. That fact was not in issue under plaintiff's statement. Notwithstanding the subject-matter of the pleadings, the trial judge refused to sustain repeated objections of the defendant to the introduction of evidence relating to commissions on policies of insurance alleged to have been sold by plaintiff prior to August 24, 1928. Section 16 of the Act of 1915, May 14, P. L. 483, as amended April 22, 1929, P. L. 627, §4 (12 PS §452), provides that no evidence is admissible, except that which relates to issues of fact averred in the pleadings.

The Act of May 17, 1921, P. L. 789, §§603, 604 (the former section amended by the Acts of May 2, 1929, P. L. 1529; June 22, 1931, P. L. 616; May 24, 1933, P. L. 990, 40 PS §233), requires all life insurance agents to have a license; the procuring or writing of any insurance business without a license is a criminal act. The plaintiff cannot recover for a service which

he was prohibited by statute from performing; subsequent compliance with the law, by obtaining a license, did not cure his former illegal conduct: *Luce v. Cook*, 227 Pa. 224, 75 A. 1098. In *Reilly v. Prudential Ins. Co.*, 264 Pa. 61, 107 A. 223, plaintiff obtained an application for insurance from defendant company on May 17, 1900. He was appointed an agent June 1st and was issued a license June 14th. The court held that he could not recover commissions on the insurance written during the period he was not authorized by law to act as an insurance agent.

The clear purpose and intent of the Act of 1921, supra, as amended, is, that the transaction of business contrary to law should not receive the aid of courts, by permitting recovery of commissions on renewal premiums. There was proof, as we read the record, that several of the policies were written after the plaintiff obtained his license. If the jury believed the plaintiff's version of the terms of the contract, and that the defendant was paid commissions, the plaintiff was entitled to his share thereof on the policies written after he was licensed, but not prior thereto. The general trend of authority in other jurisdictions which have statutes similar to ours is in harmony with this view: *Pratt v. Burdon* (Mass.), 47 N. E. 419; *Howard v. Bean* (Mass.), 175 N. E. 295; *Black v. Security Mut. Life Ass'n.* (Me.), 49 A. 51; *Pride v. Commercial Union Ins. Co.* (Ala.), 63 So. 803, affirmed 64 So. 1019; *Goldsmith v. Mfgrs.' Liability Ins. Co.* (Md.), 103 A. 627.

2. Was the plaintiff entitled to recover commissions after the date of bringing the suit?

The general rule is well recognized that in actions at law, except trespass (*Hewitt et ux. v. Penna. R. R. Co.*, 228 Pa. 397, 77 A. 623) or one founded on an anticipatory breach of contract, the plaintiff can recover only such amounts as are due at the commence-

ment of the action: *Summers v. Prudential Ins. Co.,* 319 Pa. 270, 179 A. 78; *U. S. v. Worley,* 281 U. S. 339; *Losnecki v. Mutual Life Ins. Co.,* 106 Pa. Superior Ct. 259, 161 A. 434.

The plaintiff contends that this general rule is not applicable, as he is claiming damages for an anticipatory breach of contract and that this is an entire and not a continuing contract, citing *Wilke v. Harrison et al.,* 166 Pa. 202, 30 A. 1125. In that case, damages were expressly claimed for an anticipatory breach of contract. Neither the averments in this statement nor the evidence produced supports the theory now advanced by the plaintiff. His claim very distinctly includes commissions on premiums as they hereafter become due. He cannot, therefore, insist on the immediate right of performance of this contract, which, by its provisions, is a unilateral promise for a consideration that has now been executed. It cannot be enforced until the time of payment arises: Williston on Contracts, p. 2381, §1328. The plaintiff could not prove a definite sum due for premiums payable in the future, as one or many of the policies of insurance may lapse by failure of the insured to pay the premiums. In that event, the agent's commission is lost. He must wait, therefore, until the insured actually pays the premiums. Neither a single default nor a number of defaults would amount to a breach of the entire contract. Each default would only affect the rights and liability of the party with respect to specific payment involved: *Summers v. Prudential Ins. Co.,* supra.

If we assume that this is an action in assumpsit for an accounting, as defendant contends, under section 11 of the Practice Act of 1915, (12 PS §393) it must be borne in mind that the whole theory of accounting is based upon money already received—not to be received: *Holmes v. Wakelin,* 48 Pa. Superior Ct. 643. While the

jury found there was a breach of the contract, the damages alleged to have been sustained were continuing, and could not, in view of the nature of the contract, be definitely ascertained at the time of the trial. Plaintiff was entitled to be compensated only for the loss he sustained, and that depended upon the amount of premiums that would be paid from time to time.

Our conclusion is that, on the record presented, the plaintiff was not entitled to recover for commissions collected after the bringing of the suit or on premiums not paid or due in the future.

3. That brings us to the question whether or not plaintiff was entitled to a monetary judgment.

We have already indicated that, on a new trial, proof may warrant a verdict for commissions that may have been received by defendant prior to the time he terminated his relations with the insurance company. If the plaintiff was in fact seeking an accounting, as would seem to be borne out by the statement of claim and the proof offered, the proper practice to follow, except where accounts are voluntarily submitted to the jury, is set forth in *Duggan v. Duggan*, 91 Pa. Superior Ct. 374 (reversed by the Supreme Court, 291 Pa. 556, 140 A. 342, on a question not involved in this case). As there pointed out by CUNNINGHAM, J., speaking for this court (p. 381), the jury should have determined whether defendant is liable to account and, if so, "auditors may be appointed or a jury impaneled [Act of 1840] to settle the accounts, etc. A general verdict in account render at common law merely establishes the liability of the defendant to account and the defendant is not concluded as to the dates and sums mentioned in the declaration. The only judgment authorized by such verdict is quod computet and the whole subject is open to subsequent investigation by auditors or a jury who are to make proper charges and allow

proper credits without regard to the verdict of the first jury. ...... The proceedings before auditors or a subsequent jury are in the nature of a new action and the defendant is required to plead and show whatever matter discharges him from liability to the plaintiff in consequence of not having accounted with him as he ought. The final judgment is that the party to whom a balance is due shall recover such balance from the opposite party." This practice provided for two distinct judgments. See, also, *Miller v. Belmont Packing & Rubber Co.,* 268 Pa. 51, 110 A. 802. In *Ehmling v. Ward Co.,* 279 Pa. 527, 124 A. 181, the plaintiff sued in assumpsit for a share of profits for services rendered. Both sides voluntarily submitted their accounts to the jury. It was held it was its duty to pass upon them, although that might be a difficult task.

If, in the next trial, the parties voluntarily present full accounts, the jury may determine the amount, if any, due the plaintiff. The trial judge failed in this rather complicated case to give the jury any instructions respecting the accounting, as to the proper measure of damages to guide them in their deliberations.

4. We will consider the fourth and last question very briefly, that is, Was the testimony offered by the plaintiff sufficient to change the provisions of the written contract?

The defendant, called as on cross-examination, admitted that the written agreement did not entirely or correctly include all the provisions agreed upon. We are not convinced that the court erred in admitting the plaintiff's testimony in support of the alleged oral contract.

The case will have to be retried. In view of the character of statement filed, indicating an account was demanded, and the declaration made by the appellee in his brief that "this action is based on an anticipatory

breach of contract on the part of defendant," the pleadings should be clarified so that the issues involved may be clearly and definitely set forth. If the gist of the above action is a breach of an anticipatory contract, then it is not necessary to submit to the jury the question whether the plaintiff is entitled, primarily, to an accounting, although his damages for breach of the contract may depend on the amount of the renewal premiums.

Judgment is reversed, with a venire.