Wendy J. **BERCOSKY, now Wendy J. Popielarcheck and Christina M. Carter, Administratrices, and sole testate heirs of The Estate of Phillip R. Carter, deceased**

v.

**TOWNSHIP OF CUMBERLAND, James M. Sokol, Leroy R. Baker, William Groves, The Baltimore Life Insurance Company, and Ronald L. Mallicone**

**Appeal of: Township of Cumberland, James M. Sokol, Leroy R. Baker, and William Groves.**

Commonwealth Court of Pennsylvania.

Argued May 8, 2007.

Decided July 9, 2007.

Dennis M. Makel, Washington, for appellants.

Ernest P. DeHaas, III, Uniontown, for appellees.

BEFORE: LEADBETTER, President Judge, and SMITH–RIBNER, Judge, and SIMPSON, Judge.

OPINION BY Judge SMITH–RIBNER.

The Township of Cumberland (Township) and Supervisors James M. Sokol, Leroy R. Baker and William Groves (to-

gether, Appellants) appeal from an order of the Court of Common Pleas of Greene County in an action for accounting filed originally by Phillip R. Carter (Carter), deceased, and now continued by his administratrices and heirs Wendy J. Popielarcheck and Christina M. Carter (Appellees). Appellants question whether the trial court erred when it sustained Appellees' exceptions and denied Appellants the right to present a defense to the fact-finder who settles an account after a verdict *quod computet* or "[t]he first judgment in an action of account, requiring the defendant to give an accounting before auditors." Black's Law Dictionary 1283 (8th ed.2004). They also question whether the trial court erred when it sustained the exceptions and denied Appellants due process by not having a second part of the accounting action to determine the amount of judgment.[1] Appellees question whether this is an appeal from an interlocutory order, which should be quashed.

In an opinion and order of December 20, 2004, the trial court found that Carter commenced service with the Township as its only full-time police officer on May 12, 1973, and he served as an officer until he retired on January 2, 1998. Although the Township had no ordinance creating a police pension fund when Carter was hired, on October 1, 1973 it purchased from Baltimore Life Insurance Company (Baltimore Life) Annuity Policy No. E587133. The cost was $8200 per year, and it provided for a monthly benefit of $3034.29 at retirement. The Township was the owner and Carter was the designated beneficiary.

In 1979 the Supervisors then in office, including Homer Nicholson who later died and was replaced by William Groves,

<hr />

1. Appellants present no argument on a third stated issue, whether the trial court erred when it ordered remission of the disputed amount from one but not all of the defendants and did not allow the matter to be presented to the trier of fact on this issue; therefore this issue is waived. *Commonwealth v. Smothers,* 920 A.2d 922 (Pa.Cmwlth.2007).

enacted Ordinance 4–1979 establishing a police pension fund into which would be deposited monies received from the Commonwealth from taxes paid by foreign casualty insurance companies, with the money to be used to purchase an annuity to provide a monthly pension or retirement benefit to each police officer retiring in accordance with the Ordinance and provisions of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65101–68701. The cost of the insurance policies was to be paid by the pension fund and not to be charged on any other fund; the pension was to be available to each member of the police force who reached age sixty-five and completed twenty or more years of service; and the expense of administration exclusive of payment of the retirement allowance was to be paid by the Township. An amendment in 1994 deleted the requirement of reaching age sixty-five.

The Township surrendered the original policy in July 1980. By that time it had paid a total of $57,400, and the policy had earned $6897.40 in dividends and interest. Baltimore Life had charged $8564.50 in fees, so the cash value at the time of surrender was $55,732.90. The Township endorsed the check for the proceeds from the surrender of policy E587133 back to Baltimore Life, and it deposited $48,000 (in two checks of $24,000) into Annuity Policy No. 725805, with Carter as the beneficiary. The trial court found that the remainder, $7732.90, was placed into an annuity policy or policies for the benefit of the Township's second full-time police officer, who was hired in July 1980. In 1982 Annuity

Policy No. 725805 was rolled into Policy No. 100100575.

Carter filed his action on June 16, 1998 seeking an accounting from the Township for the $7732.90 that was not placed into an annuity policy for his benefit in 1980. He contended that the Township had no right to transfer cash from an annuity purchased to fund his pension to an annuity purchased to fund the pension of another. In addition, he sought an accounting for total fees and renewal charges deducted for policies purchased for his benefit, $13,991.42, because Ordinance 4–1979 provides that the Township pays expenses of administration.[2] In addition, Carter claimed that Baltimore Life and its employee or agent Ronald L. Mallicone owed a duty to account for the amounts in the counts against the Township and also claimed that Baltimore Life acted in bad faith toward him. The trial court bifurcated the proceeding in March 2004, and the non-jury trial in the first phase on March 29, 2004 was to determine whether Carter was entitled to an accounting and whether Baltimore Life was liable on the bad faith claim.

In its December 20, 2004 opinion, the trial court explained that to establish a right to an accounting, a plaintiff must show (1) that there was a valid contract, express or implied, between the parties under which (a) there was a legal obligation imposed on the defendant to account to the plaintiff for monies received by the defendant, or (b) if there was such a duty and the defendant had not accounted, the plaintiff therefore was unable to state the exact amount due, and (2) that the

---

**2.** He sought as well an accounting for $85,830.25, which was the sum used on a "Cash Value Illustration" issued by Baltimore Life on November 1, 1979, Plaintiff's Ex. 13, which he asserted was the total value of his original annuity and unallocated money in the

fund. The trial court concluded that the figure was not explained by any evidence as to how it was derived or what it represented, and it declined to make such an uncertain figure the basis of an accounting.

defendant breached the duty or was in dereliction of duty under the contract. *Haft v. United States Steel Corp.*, 346 Pa.Super. 404, 499 A.2d 676 (1985). A contract of employment existed between Carter and the Township, including additional consideration for his performance of duties in the form of a pension as deferred compensation upon retirement. The Township accepted monies under the Act of May 12, 1943, P.L. 259, *as amended,* 72 P.S. §§ 2263–2263.3; under that legislation and the Ordinance it was obligated to purchase annuity contracts. The statute specified that the municipality owned all rights under the contract "except the rights to designate the beneficiary, to change the beneficiary, and to receive the death pension and retirement benefits thereunder." 72 P.S. § 2263.1(7).

The trial court concluded that the statutory right of Carter as the beneficiary to receive the retirement benefits overcame the Township's claim of a right to divert the $7732.90 based upon its ownership. Further, once an employee is vested in a retirement plan, his or her benefits may not be reduced by governmental action, *Police Pension Fund Ass'n Board v. Hess,* 127 Pa.Cmwlth. 498, 562 A.2d 391 (1989), and the custodian of funds cannot deprive a vested member of the right to receive all benefits to which he or she has become vested, citing *Kappel v. United States,* 369 F.Supp. 267 (W.D.Pa.1974). The trial court rejected the claim that the statute of limitations had long since expired, based upon application of the discovery rule, citing *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 608 A.2d 1040 (1992).[3] It determined as a factual matter that, in this situation, a reasonable person in Car-

ter's shoes would not have made regular inquiries to investigate the status of an annuity purchased for him, and it concluded that he had a right to an accounting for the sum diverted in 1980. The trial court did not agree that the ordinance provision for payment of expenses of administration prohibited the deduction of any of the sums dedicated by the Township to an employee's retirement to pay the costs of the financial vehicle, *i.e.,* charges by Baltimore Life.

As for claims against Baltimore Life and its employee Mallicone, the trial court noted that no contract existed between Carter and Baltimore Life. He was a third-party beneficiary, and it cited *Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh,* 776 F.2d 1174 (3d Cir.1985), for the proposition that a life insurance company generally does not have a fiduciary duty to a beneficiary. The trial court declined to impose a duty for a life insurance company to obtain consent by all beneficiaries for rollovers. The bad faith claim against Baltimore Life was based on Carter's claim that the company refused to answer inquiries about his pension in 1996 and made statements to the Township and to the state Insurance Department that he characterized as misleading. The trial court observed that bad faith in the insurance context means failure to pay a claim when there is no reasonable basis for doing so. *Terletsky v. Prudential Prop. & Cas. Ins. Co.,* 437 Pa.Super. 108, 649 A.2d 680 (1994). In 42 Pa.C.S. § 8371, the legislature provided an incentive to counter an insurer's urge to delay payment by providing for interest, fees and punitive damages where bad faith conduct is shown. This

**3.** The holding in *Hayward* was overruled in part in *Fine v. Checcio,* 582 Pa. 253, 870 A.2d 850 (2005), by the Supreme Court's clarification that the discovery rule tolls the running of the period, and it is not relevant to application of the rule whether the prescribed period has expired.

analysis, however, did not apply in this annuity situation.

On February 24, 2006, the Township filed an accounting and exceptions were filed on March 10, 2006. On August 11, 2006, the trial court entered an order stating that after reviewing the account filed by the Township and the exceptions taken thereto and consideration of the briefs and arguments of counsel, the trial court sustained the exceptions and ordered and directed the Township "to remit" to the Carter estate within thirty days the sum of $7732.90 increased by the rate paid by Baltimore Life on an identical investment for the period from July 15, 1980 when the money was removed from Carter's account until January 3, 1998, the date of his retirement, and from then on at the legal rate of interest of six percent. The order stated that if the Township failed to submit the sum, together with appropriate documentation, the trial court would appoint an accountant at the expense of the Township to ascertain the proper sum. It withheld judgment on the plaintiffs' request for attorney's fees and costs.

In a Supplemental Pa. R.A.P.1925 Statement of October 30, 2006, following discovery of an earlier statement of matters complained of on appeal that was not filed in the correct manner, the trial court stated that there was no challenge to the basic determination that the Township had a duty to account for the $7732.90. The trial court indicated that the opinion of December 20, 2004 and the order of August 11, 2006 explained its reasoning. Also, the present appeal probably was interlocutory as no order had been entered against the Township directing it to pay a sum certain to the estate, and no judgment had been entered.

Appellants first argue that an order is final for purposes of appeal if it disposes of all claims and all parties. Pa. R.A.P.

341(b)(1); Chase Manhattan Mortgage Corp. v. Hodes, 784 A.2d 144 (Pa.Super.2001). They assert that the trial court's August 11, 2006 order disposes of all claims and all parties in that it expressly orders and directs the Township to remit to Carter's estate within thirty days $7732.90 increased as specified, and payment is to be made by Appellants only, not by Baltimore Life. To the extent that the trial court's supplemental Rule 1925 statement indicates that the amount need not be paid presently, Appellants assert that the August 11, 2006 order should be clarified in regard to use of the word "remit," which has been defined as "to send money in payment." Random House Dictionary, Concise Edition (1980).

Second, Appellants contend that the trial court erred in not completing the bifurcated process provided for an accounting action. They cite Simon v. Yantorn, 81 Pa. D. & C. 195 (1953), for relevant principles. The suit for an accounting in practical effect comprises two actions and the practice provides for two distinct judgments; in the first action the jury or fact-finder determines whether the defendants are liable to account, and, if so, the verdict rendered is a verdict quod computet. Simon. See also Pa. R.C.P. No. 1530; 14 Standard Pennsylvania Practice 2d §§ 81:25–81:27. Appellants state that the subsequent proceedings are in the nature of a new cause of action wherein a defendant may plead and prove whatever defenses the defendant may advance to avoid liability. Id. at 198 (specifying defenses to liability "for the failure to account"). Appellants argue that the second part of the case, to settle the account, has not been completed; therefore, it was error to order them to remit funds.

Appellees argue first that this appeal is from an interlocutory order because the order of August 11, 2006 does not dispose

of all claims and all parties. Until the present value of $7732.90 is calculated and any dispute over that calculation is resolved by the trial court, the amount that the Township owes will not have been finally determined. In addition, the August 11 order reserved ruling on the claim of Appellees for attorney's fees and costs.

The Court agrees that the present appeal is interlocutory and may not proceed. Because a final settlement of the amount had not been finally determined by the trial court, the second phase of the action for an accounting has not been completed. *Golder v. Rabinowitz*, 125 Pa.Super. 573, 190 A. 407 (1937). *See also Hudak v. Walter G. O'Connor Co.*, 1 Pa. D. & C.3d 317 (1975) (quoting 1 Goodrich–Amram § 1021–3). Cases and treatises are unanimous in concluding that the amount of the settlement of the account must be determined by a jury or by the court or an auditor and entered as a final judgment by the court before there may be an appeal. Hence, the Court quashes this appeal as it is from an interlocutory order and not a final, appealable order under Pa. R.A.P. 341.[4]

### ORDER

AND NOW, this 9th day of July, 2007, this appeal from the order of the Court of Common Pleas of Greene County of August 11, 2006 is quashed as being an appeal from an interlocutory order.

---

4. On return of this matter to the trial court, it may wish to modify the requirement that Appellees "remit" any money to Carter's estate until the final amount is determined and entered as a judgment. In addition, the trial court should dispose, of the pending request for attorney's fees and costs filed by Appellees. After entry of a final, appealable order, Appellants may decide whether to appeal the trial court's decisions against them and in favor of Baltimore Life.