**Andrews et al. v. Baldwin et al.**

Before Evans, P. J., Laub, J., and Braham, P. J. (53rd judicial district, specially presiding).

*O. J. Graham*, for plaintiffs.

*C. T. Bryan*, for defendants.

BRAHAM, P. J., November 23, 1946.—This case is before the court en banc upon exceptions to the adjudication and verdict for plaintiffs, arrived at after trial without jury. The adjudication is reported in 4 Lawrence 209.

The action was in assumpsit to recover a real estate commission, the services having been performed by plaintiff, Mary E. Beckwith, as real estate salesman but recovery being sought in the right of the real estate broker for whom she worked. This broker was Erie Home Building Company, a corporation, and its president was Wilburforce Andrews. As pointed out in our previous opinion, it is the theory of the Real Estate Brokers License Act of May 1, 1929, P. L. 1216, 63 PS §§431-441 that suit for a real estate commission may be brought only by a broker; that sale may actually be made by a real estate agent of lesser rank than a broker, known as a salesman; but that the salesman can receive compensation only from a broker. This plainly imports the necessity for each real estate agent to secure a license as a broker or to seek protection, as it were, under the aegis of some licensed broker. . . .

The most interesting point raised by the exceptions relates to the right of Mary E. Beckwith to participate as party plaintiff in the suit. Section 16 of the Act of 1929, 63 PS §446, provides that no suit for a real estate commission by anyone except a real estate broker shall be brought and section 15(b) of the act, as amended by the Act of May 25, 1945, P. L. 1023, 63 PS §445, provides that "no real estate salesman shall accept or receive compensation of any kind from any person other than the licensed real estate broker by whom he is employed", etc. Mary E. Beckwith was not a broker, only a salesman. By her contract with Erie Home Building Company, plaintiffs' exhibit C, she was to receive 40 percent of the commission if she produced the "listing" and someone else from the office sold the property, 60 percent if another produced the listing and she sold the property, 100 percent if she both produced the listing and sold the property. In the present case she produced the listing of defendants' property, as appears from finding of fact numbered 2, and she sold it at a price satisfactory to defendants, as

appears from findings numbered 3 to 5, inclusive. She is therefore entitled to all the commission.

Can Mary E. Beckwith, under these circumstances, maintain suit either in her own name or in the name of the Erie Home Building Company? At the outset it must be observed with approval that all possible parties plaintiff appear of record. Since, as pointed out in our former opinion, Procedural Rule 2002 does not apply, the problem is governed by the general principle that, if all proper parties plaintiff appear of record the manner in which one beneficially interested appears is unimportant because the record may be amended at any stage: Paxos v. Jarka Corp., 314 Pa. 148, 151; Aiken, to use, v. Mayberry et al., 128 Pa. Superior Ct. 15, 19; Act of 1858, P. L. 243, 12 PS §534. Amendment may be allowed even in the Supreme Court: M. E. Church of Franklin v. Equitable S. Co., 269 Pa. 411, 415.

The contention that, because all of this recovery goes to the salesman to the exclusion of the broker, the Real Estate Brokers Act is in some way violated, is unsound. It is enough for the law to find the contract between Miss Beckwith and Erie Home Building Company, supported by a valuable and a mutual consideration: A. L. I. Restatement of the Law of Contracts, §81; Real Estate Co. of Pittsburgh v. Rudolph, 301 Pa. 502. Who are we to say the company should not have contracted to allow her the full commission when she did all the work? Perhaps in the number of customers brought into the office by her or the effective selling of their own listed properties by her the company is amply repaid. It is a wise businessman who contents himself with a reasonable profit from the efforts of a capable and enterprising subordinate. How the employer takes his profit is up to him. So long as the real estate salesman is brought under the responsibility of the real estate broker the law is satisfied.

Furthermore, where a suit is brought to use it does not lie in the mouth of defendant to deny the equitable title of the use plaintiff: Penna. Co., etc., to use, v. Lebanon B. & L. Assn., 337 Pa. 316. To denounce, as somehow fraudulent and tending to promote evasions of the act, an arrangement whereby the salesman takes from the broker all the commission in a particular sale is to overlook the impossibility of regulating all the details of the contract between real estate broker and real estate salesman. Beyond requiring a license from broker and salesman and providing how suit shall be brought on the contract the law has not attempted to go.

But according to defendants' contention the evidence of Mary E. Beckwith discloses the lack of any connection between the company and its president and the contract in suit. She spoke of "I" and "me" with reference to the contract; but she also testified to her employment by the company. The testimony of an agent is always competent to prove agency: Stern v. Dekelbaum, 153 Pa. Superior Ct. 452, 455. To be sure she wavered somewhat when asked whether Erie Home Building Company or Wilburforce Andrews, its president, was her employer and answered both ways. The statute, however, is difficult of interpretation and her meaning is clear; she worked as salesman under these licensed brokers.

The only evidence on the point is the testimony of Miss Beckwith; no one says she did not work for the company, defendants contenting themselves with denying any disclosure by Miss Beckwith of her agency.

Is the claim sued upon the subject of a suit to use under our practice? Defendants' sixth exception is directed at our conclusion that suit should have been brought by the Erie Home Building Company to the use of Miss Beckwith. Defendants in opposition cite 2 Standard Pa. Practice 316. The decision of this point

is not necessary to a decision because defendants' obligation to pay is to the Erie Home Building Company, broker plaintiff. Miss Beckwith, the salesman, could not recover alone. We might therefore refuse her any right to participate as plaintiff in this action, remitting her to a second action against her employer under section 15 of the act (63 PS §445). But one purpose of suits to the use of another is to prevent unnecessary litigation. Why require payment to the broker when, by the broker's own act, the money is already payable to the salesman? In their discussion of the case defendants overlook the power to assign future rights. This is explained in A. L. I. Restatement of the Law of Contracts §154 as follows:

"(1) Except as stated in §151, a right expected to arise in the future, under a contract or employment in existence at the time of the assignment, can be. effectively assigned.

"(2) An assignment of a right expected to arise under a contract or employment not then existing is operative only as a promise by the assignor to assign the right and an authorization to the assignee to enforce it, but neither imposes a duty upon the obligor nor precludes garnishment by the obligee's creditors."

See also Philadelphia v. Lockhardt, 73 Pa. 211; East Lewisburg L. & M. Co. v. Marsh, 91 Pa. 96; Baeder's Estate, 224 Pa. 452; Patterson et al. v. Caldwell et al., 124 Pa. 455.

Section 151 of the Restatement exempts from the rule quoted above an assignment "forbidden by statute or by the policy of the common law". Section 16 of the Real Estate Brokers License Act (63 PS §446) forbids any action in our courts by any person for compensation for selling real estate unless such person is a real estate broker. Does this suit to use violate the statute? The question is a close one but we believe this suit may be sustained as combining two suits. If we are wrong

the main action is not defeated; the broker may recover; the use action alone is lopped off.

This covers defendants' exceptions except those numbered 7 to 10, inclusive, which are purely formal. We have not, however, decided the case without consideration of Tice v. Easterday, 148 Pa. Superior Ct. 457, a case not cited by either party to this action. There plaintiff, a real estate broker failed to show that he was actually licensed when he made the sale. The court refused to enter judgment for defendant but granted a new trial.

In the present case plaintiff, Mary E. Beckwith, has failed to show that she was actually licensed in August of 1942 although she showed receipt of a license issued at sometime during the year. Our case differs from Tice v. Easterday, supra, however, in that here the statement of claim avers that Miss Beckwith was duly licensed; the affidavit of defense fails to deny the averment; plaintiffs might have offered the undenied averment in evidence but apparently overlooked doing so; plaintiffs also apparently overlooked completing their evidence on the point; the objection is not raised by any exception; and finally, the subject is not mentioned in defendants' final brief. Under these circumstances it seems a futile thing to grant a new trial. This is especialy true since the case was tried without a jury and there would be no point in having the trial repeated. . . .

### Dissenting opinion

LAUB, J., November 23, 1946.—Because of the experience and learning of the majority, I approach the preparation of this dissent with some diffidence. But to me the public import of the decision is of sufficient quality to justify an expression of my views thereon.

The Real Estate Brokers License Act of May 1, 1929, P. L. 1216, 63 PS §431 et seq., was designed to correct

a known evil: Young v. Department of Public Instruction, 105 Pa. Superior Ct. 153. As was said in Verona v. Schenley Farms Co., 312 Pa. 57, 64: "The obvious purpose of the Act of 1929 is to prevent fraud and public wrong by correcting well-recognized mischief theretofore existing." A partial list of the frauds and public wrongs which the act thus sought to correct was recounted by the Supreme Court in the footnote to page 64 of the opinion. It is, therefore, apparent that the public interest is inextricably involved in the terms of the act.

The act presents a method whereby the Department of Public Instruction can control dealings in real estate through the licensing of brokers and salesmen and by revoking, suspending or refusing licenses in proper cases. It arbitrarily establishes a difference between the requirements for licensing as a broker and those demanded of a salesman, and throughout it contemplates that no salesman may operate unless employed by a licensed broker. A careful reading of the statute leaves an abiding conviction that a broker's supervision over the salesman is a material part of the statute's protective mechanism.

The legislature, therefore, it appears to me, had a sound reason for specifically prohibiting the institution of suits by salesmen. It wished to insure the public against unwarranted claims by irresponsible and unethical salesmen as well as by those who, through ignorance and innocent blundering, get their clients into difficulty.

It is entirely probable that the majority opinion will not affect the administration of the act, but there is a possibility of many real estate salesmen legally functioning as brokers but without the requisite experience or responsibility attendant upon that estate. Under the ruling in this case it would be perfectly proper for a salesman to pay a broker for the privilege of operat-

ing as a free-lance salesman under the broker's banner but without imposing anything but a nebulous hazard to the broker. Such a contract would transform the salesman into a broker in deed if not in name. By his contract he purchases merely the right to use the broker as sponsor and having paid the agreed consideration, owes no further duty to him except to make sure the broker never hears of any violations of the act which he commits, since such knowledge would jeopardize the broker's license under section 14 of the act. The broker, on the other hand, is in an enviable position since, by section 14, he risks no penalty unless it appears that he had guilty knowledge of the salesman's violation.

I feel that the majority has overlooked the full import of the word "employ" and its various forms as used throughout the act. In section 6 it is provided that no broker's license shall be issued unless the applicant shall have served a two-year apprenticeship as a salesman *in the employ* of a licensed broker. Section 7, paragraph (*c*), requires an applicant for a salesman's license to name his last *employer*, and to name his present employer or the person into whose *employ* he is about to enter. Section 9, paragraph (*b*), requires brokers to display the renewal card of all real estate salesmen *employed* by them. It requires that salesman's licenses shall designate the *employer* of the salesman by name, and, further, it regulates the manner in which changes may be made in the *employer* of salesmen. Section 14 provides for the revocation of a broker's license if said broker had guilty knowledge of violations of the act by any real estate salesman *or other employe*. Finally, section 15, paragraph (*b*), makes the following important declaration:

"No real estate salesman shall accept or receive compensation of any kind from any person, other than the licensed real estate broker *by whom he is employed*, for any service rendered or work done by such sales-

man in buying, selling, exchanging, leasing, or negotiating a loan upon real estate or interest therein."

It seems obvious that the various forms of the word "employ" as thus used and taken in full context imply a genuine master-servant relationship between broker and salesman. There is no sanction anywhere for the independent-contractor type of agreement which obtained between plaintiffs in this suit. They could not, by contract, remove themselves "from the all embracing terms of the Real Estate Brokers Act": Custis & Co. v. Pennsylvania Salt Mfg. Co., 351 Pa. 148, 152. I consider the type of contract made between these plaintiffs as definitely against public policy, at least insofar as the independent-contractor clause is concerned.

I agree, as pointed out by the majority, that it is the theory of the statute that suit for a real estate commission may be brought only by a broker; that a sale may actually be made by a salesman; but that the salesman can receive compensation only from a broker. But I respectfully disagree with the conclusion that "This . . . imports the necessity for each real estate agent to secure a license as a broker or to seek protection, as it were, under the aegis of some licensed broker". To me it imports something entirely different. As I view the theory of the act, suit for real estate commissions may be brought only by a broker because the broker is the real party in interest. The salesman is only his agent—his servant and employe. Because the salesman is working for the broker, the business belongs to the broker, and whatever compensation is due the salesmen it is due him as compensation for his services *to the broker* and not to the client. His pay is in wages and not in commissions. That is why salesmen must seek their remedies against their employers and are prohibited by statute from initiating suits against others. An analogous situation prevails in most law offices. Much of the work attendant upon a

large lawsuit is done by law clerks. Would it not be monstrous to permit the clerk to sue the client for the fee when the responsibility for the suit was in the lawyer?

In the case at bar Erie Home Building Company was not the employer of Mary E. Beckwith within the contemplation of the law. It is true that some of the clauses in the contract would indicate the contrary but we are here concerned with the rights of the parties to recover in this particular case and under this particular clause. Here Mary E. Beckwith secured the listing and negotiated the sale. Under the terms of her contract with the company she would be entitled to the full commission. Was she then acting as an employe of the company or was she acting as an independent contractor? It seems clear that she was the latter rather than the former.

If I am correct in my conclusion that Beckwith was an independent contractor, then the company has no real or beneficial interest in her commissions. How then can the company recover as a party plaintiff? Under the Real Estate Brokers License Act it can sue only for its own commissions. The statute does not give a broker the right to substitute himself as party plaintiff in every cause in which a salesman becomes involved. In this case, and under the terms of its contract with Beckwith, the company has no interest whatever in the real estate deal over which suit was brought. It could collect no commissions because it earned none; nor did any of its servants earn any in its behalf.

It is likewise clear that Beckwith can bring no action. The statute specifically forbids it. What she cannot do directly she may not do indirectly. Especially is this true where the policy of the public is offended.

Under these circumstances it would appear that neither of these plaintiffs has a right to recover in this action, and it would make no material difference which was named as the legal and which the use plaintiff.

Nor do I derive the same meaning as the majority from Penna. Co., etc., to use, v. Lebanon B. & L. Assn., 337 Pa. 316. That case is cited for the proposition that a defendant may not deny the equitable title of a use plaintiff, but I do not read it as a precedent which would deprive present defendant of the right to contest use plaintiff's presence in court. In that case a mortgagor sought to avoid payment of the mortgage debt to an assignee of the mortgagee on the theory that there was no consideration for the assignment. The mortgagor did not deny the debt nor the default. The Supreme Court held that this was no defense against the demands of the mortgagee, the legal plaintiff. This rule is not applicable here since the so-called legal plaintiff (the company) had no right of action against defendant. Section 151($b$) of A. L. I. Restatement of the Law of Contracts, which is also cited by the majority, states categorically:

"A right may be the subject of effective assignment unless, . . . the assignment is forbidden by statute or by the policy of the common law."

Now illustration 5 under this section states the following:

"A, a retired officer of the United States Army, borrows money from C and in order to secure the loan assigns to C whatever is due or shall become due to A under his pension. The assignment is ineffective under the statutes of the United States, both as to any sum of money then due and also as to any sums which subsequently become due."

If the assignment is ineffective as stated, who, if not defendant, could raise the defense?

My chief point of departure from the majority is illustrated by that portion of the opinion which states:

"Does this suit to use violate the statute? The question is a close one but we believe this suit may be sustained as combining two suits. If we are wrong

the main action is not defeated; the broker may recover; the use action alone is lopped off."

My thought is that if the use action is lopped off (as the statute clearly says it must be) the broker may not recover since he has no interest whatever in the subject of the lawsuit. I think the action must fail in both respects.