## Luce, Appellant, v. Cook. :

*Brokers—Real estate brokers—License tax—Failure to pay tax—Acts of May 27, 1841, P. L. 396, April 10, 1849, P. L. 570, May 15, 1850, P. L. 772, June 14, 1901, P. L. 565, and April 14, 1905, P. L. 161.*

1. The payment of a tax and the securing of a license is a condition precedent to the lawful transaction of business by a real estate broker.

2. A real estate broker who has been regularly assessed a license tax, cannot recover a commission fixed by specific contract for the sale of land when the sale takes place in June and the tax is not paid or the license issued until August of the same year. Subsequent compliance with the law will not cure the illegality of previous transactions.

3. The amount of the license tax to be paid by a real estate broker is to be ascertained and assessed on the volume of business transacted by the broker during the preceding calendar year.

Argued Jan. 17, 1910. Appeal, No. 8, Oct. T., 1909, by plaintiffs, from judgment of C. P. Westmoreland Co., Nov. T., 1907, No. 605, on verdict for defendant in case of William W. Luce et al., trading under the firm name of W. W. Luce & Co., v. Joseph Cook. Before FELL, C. J., MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover $6,000 commissions fixed by special contract for the sale of certain coal lands. Before DOTY, P. J.

At the trial the court gave binding instructions for defendant on the ground that at the time the sale was made the plaintiffs had no license as real estate brokers.

Verdict and judgment for defendant. Plaintiffs appealed.

*Error assigned* was in giving binding instructions for defendant.

*Shaw & Silsley*, with them *E. C. Higbee*, for appellants.

*W. J. Sturgiss*, of *Howell, Sturgis & Morrow*, with him *Moorhead & Smith*, for appellee, cited: Com. v. Black Co., 223 Pa. 74; Com. v. Manley, 2 Phila. 173; Shaw's Est., 16 Pa. Dist. Rep. 186.

OPINION BY MR. JUSTICE MOSCHZISKER, February 14, 1910:

The assignments of error raise this question: Can a real estate broker, regularly assessed a license tax, recover a commission fixed by specific contract, for the sale of land, when the sale takes place in June and the tax is not paid or the license issued until August of the same year?

Under the established rule in Pennsylvania, a real estate broker cannot have the aid of the courts to recover commissions which were earned before he had paid his tax and received a license; and the fact that he sues on a special contract will not help him. This rule rests upon the theory that since the law prohibits under a penalty the doing of business by unlicensed brokers, contracts providing for the payment of commissions to such persons are opposed to good morals and public policy and cannot be enforced: Johnson v. Hulings, 103 Pa. 498.

The Act of May 27, 1841, P. L. 396, provides, upon the payment of certain fixed fees, for the commissioning or licensing of stockbrokers "for the term of one year from the date of such commission," with a provision for the issuing of a new commission "for each succeeding year." Section 5 provides: "No individual or corporation, other than those duly commissioned under the provisions of this act, shall use or exercise the business or occupation of a stockbroker, etc., under a penalty of five hundred dollars for each and every offense," etc. Section 18, Act of April 10, 1849, P. L. 570, extends this act to real estate brokers.

It is contended by the appellants that the rule should be modified, for the reason that subsequent legislation has so changed the law that at the present time the license tax to be paid by a real estate broker depends upon the amount of business done by him in each particular year; and that this cannot be ascertained until the end of the year in which the business is transacted.

Section 7, Act of May 15, 1850, P. L. 772, provides: "Hereafter all real estate brokers shall be required to pay annually for their respective commissions or licenses granted in pursuance of the several acts of assembly now in force relating

to the same, upon their annual receipts . . . ., three per centum." Section 8: "The appraisers of mercantile taxes are required to ascertain and assess the several brokers aforesaid, according to the amount of business done by them respectively, in the same manner as required by them in regard to vendors of merchandise." And sec. 9: "Nothing in this Act shall be taken or held to repeal any obligation, liability, penalty, or duty imposed upon any broker by existing law of this Commonwealth, except only so far as the amount of the tax for a commission or license." Section 10, Act of May 1, 1841, P. L. 307, classifies vendors of merchandise and provides for the payment of their respective licenses according to the amount of business done, and provides: "Those who are esteemed and taken to make and effect annual sales to the amount of . . . ., shall constitute the . . . . class, and pay . . . . dollars;" and so on through the several classes. The Act of April 16, 1845, P. L. 532, sec. 5, provides for the appointment of appraisers "for the purpose of securing the tax now authorized by law to be assessed on wholesale dealers and retail dealers of merchandise." And sec. 7: "Upon the request of any person or firm, who may allege that he is not properly assessed, it shall be the duty of the treasurer to administer an oath or affirmation, and to interrogate him as to the amount of his sales for the previous year." Section 12, Act of April 22, 1846, P. L. 486, extends these several sections of the act of 1845 to all the counties of the state. Section 4, Act of April 11, 1862, P. L. 492, provides: "The civil suit for the recovery of the amount of the license shall not be a bar to any proceeding by indictment, where such a proceeding is now authorized by law, but the remedies by the civil action and indictment shall be cumulative." And sec. 5: "It shall be the duty of every City and County treasurer to sue for the recovery of all licenses . . . . if not paid on or before the first day of July in each and every year, within ten days after that date." And this same provision is contained in sec. 7, Act of May 2, 1899, P. L. 184, as amended by the Act of June 14, 1901, P. L. 565, with the exception that thirty days is given within which to bring suit. It appears to be

the practice to rate the license on the volume of business transacted during the preceding calendar year, thereby enabling real estate brokers and others to comply with the requirement that a license shall be secured before the business is transacted. We find much in the various acts of assembly just reviewed recognizing, if not providing for this method of assessing the tax, and we find no provision so inconsistent therewith as to make it necessary to declare the method an improper or unlawful one. The Act of May 2, 1899, P. L. 184, providing for a tax on retail vendors and dealers in merchandise, is a recent express recognition of this custom; sec. 4 provides: "The whole volume of business transacted during the preceding calendar year shall be the basis upon which the license is to be rated." Commonwealth v. Real Estate Trust Company, 211 Pa. 51, states the act of May 27, 1841, to be the foundation of the system for the taxation of brokers, and rules that the seventh section of the act of 1850 merely established a new rate of taxation, leaving the form of the tax as before, and that "the class of persons required to procure a license before engaging in the business was left unchanged." After this decision the Act of April 14, 1905, P. L. 161, was passed, amending the seventh section of the act of 1850 as amended by the Act of 1901, P. L. 565, by adding the words: "Whether persons, firms or corporations"; but otherwise re-enacting the section as it appears in the act of 1850. The effect of this was to incorporate the section re-enacted into the act of May 27, 1841: Commonwealth v. Black Company, 223 Pa. 74. To summarize, the act of 1841, extended to real estate brokers by the act of 1849, as affected by subsequent legislation, fixes a tax upon such brokers of three per centum of their annual receipts, with a provision that no one shall use or exercise such business or occupation without first paying his tax and taking out a license "under a penalty of five hundred dollars for each and every offense." The other acts of assembly before referred to provide or indicate the time and manner of making the appraisement upon which the tax or license is to be rated. Under these acts the payment of a tax and the securing of a license is a

condition precedent to the lawful transaction of business by a real estate broker.

Subsequent compliance with the law will not cure the illegality of previous transactions: Chicago Building & Manufacturing Company v. Myton, 24 Pa. Superior Ct. 16; Delaware River Quarry, etc., Company v. Bethlehem & Nazareth P. Ry. Company, 204 Pa. 22.

As the appellant had not paid his tax or secured his license at the time he earned the commissions sued for, he was using and exercising the business of a real estate broker against the plain mandate of the law, and cannot recover.

The assignments of error are overruled and the judgment of the court below is affirmed.