Young, Appellant, *v.* Department of Pub. Inst.

154

Argued March 16, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Earl V. Compton,* for appellants.

*Wm. A. Schnader,* Attorney General, and with him *Harris C. Arnold,* Deputy Attorney General, for appellee.

Opinion by Gawthrop, J., May 4, 1932:

These four appeals are from judgments of the court of common pleas of Dauphin County affirming an order of the Department of Public Instruction of the Commonwealth, suspending appellants' licenses to act as real estate brokers and salesmen. The individual appellants are officers and stockholders of the

corporate appellant and they actively carried on its real estate brokerage. The company and the individuals were holders of real estate brokerage and salesmen's licenses issued by the Department of Public Instruction pursuant to the provisions of the Act of May 1, 1929, P. L. 1216, 63 P. S. 431, entitled "An Act to define real estate brokers and real estate salesman; and providing for the licensing, regulation, and supervision of resident and nonresident real estate brokers and real estate salesmen and their business."

The material facts are not in dispute. About September 1, 1930, one Dixon employed J. A. Young & Company to sell a piece of real estate for him on a three per cent commission and gave it the exclusive privilege of making the sale. A week later J. C. Young represented to Dixon that he knew a person to whom the property could be sold, but that the prospective purchaser was represented by another broker who demanded that he also receive a three per cent commission from the seller. After some controversy Dixon agreed to pay a total commission of $300, which was about $100 more than three per cent of the selling price. A sale of the property was consummated and Dixon paid $300 to J. C. Young. Dixon requested the name of the second broker at the time he agreed to pay the $300 and again when the sale was consummated. Young refused to disclose his name. There was in fact no second broker. When Dixon discovered the true facts he made complaint to the Department of Public Instruction and at a hearing held by it J. A. Young admitted the above stated facts. A suspension of appellants' licenses for a period of four months followed.

Two questions are raised; first, whether the misrepresentations made by J. A. Young to Dixon were such as warranted the Department of Public Instruction in suspending the licenses by authority of the Act of 1929; second, whether the act is constitutional.

The act provides inter alia, that from and after January 1, 1930, it shall be unlawful for any person, co-partnership, association or corporation to engage in or carry on the business or act in the capacity of a real estate broker or a real estate salesman within this Commonwealth without first obtaining a license as a real estate broker or real estate salesman from the Department of Public Instruction of this Commonwealth, and that this department shall issue real estate broker's and salesmen's licenses, under the provisions of the act, and shall supervise and control all such licenses. The carrying on of the business of a real estate broker after January 1, 1930, by any person, co-partnership, association or corporation without a license is made a misdemeanor.

Section 10 (a) provides that the Department of Public Instruction "shall have the power temporarily to suspend or permanently to revoke licenses theretofore issued by the department under the provisions of this act at any time when, after due proceedings, it shall find the holder thereof to have been guilty, in the performance or attempt to perform any of the acts prohibited to others than licensed real estate brokers or real estate salesmen under the provisions of this act, (1) of knowingly making any substantial misrepresentations; ...... (4) of any other conduct ...... which shall constitute a tort," etc.

Appellants' first contention is that the misrepresentations made by J. A. Young to Dixon were not misrepresentations for which the act authorizes the suspension of a real estate broker's license, because they were made to appellants' own client and not to a person to whom he was trying to make a sale; and that, therefore, they were not made "in the performance or attempt to perform any of the acts prohibited to others than licensed real estate brokers." It is urged that the act was not designed to protect persons who employ real estate brokers, but only third parties

with whom such brokers deal in the course of their employment. In other words, the argument is that if the fraud had been practiced on the buyer the license could have been suspended or revoked under the authority of the act; but that the perpetration of it on a licensee's own principal is not a good cause for a suspension or revocation. Nothing in the act lends the slightest support to such a contention. The manifest purpose of the act is to protect the public in its dealings with real estate brokers and salesmen. By its terms the responsibility of a licensed real estate broker for knowingly making any substantial misrepresentations is the same whether they be made to his principal or to any other person, if they are made in an attempt to effect a purchase or sale of real estate for another person. The misrepresentations here involved were made for the purpose of effecting a sale of Dixon's property. It follows that they fully warranted the department in suspending the licenses of appellants under the authority conferred by Section 10 of the act.

Appellants' remaining contention is that the act is unconstitutional because it exempts from its provisions requiring the obtaining of a license, attorneys-at-law and justices of the peace. They urge that it is special legislation, prohibited by Section 7 of Article III of the Constitution; that it is not a classification which could be constitutionally made by the legislature; and that it unwarrantably interferes with the equality of opportunity guaranteed by Section 1, Article I. Our Supreme Court has many times sustained classification as the proper exercise of legislative power, and held that it is a legislative question with which the courts will not interfere, if made in good faith and based on genuine and substantial distinctions of the subjects classified: Com. v. Grossman, 248 Pa. 11. In Seabolt v. Commissioners of Northumberland County, 187 Pa. 318, the court, in sustaining

such legislation, said: "Legislation for a class distinguished from a general subject is not special, but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. If the distinctions are genuine the courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is not wisdom, but good faith in the classification." What business or occupation so far affects the public welfare and good order as to require it to be licensed is a matter of legislative consideration and control which, when exercised in good faith, is outside of the jurisdiction of the courts: Oil City v. Oil City Trust Co., 151 Pa. 454. Classification of persons in a licensing act may be so unreasonable as to render the act, or parts of it, unconstitutional as in Com. v. Humphrey, 288 Pa. 280. Every case must be determined entirely on its own facts.

The evil which the legislature evidently intended to remedy by the Act of 1929 is manifest. In recent years there had been a great increase in the number of persons engaged in the business of real estate brokerage in the State. The business had attracted to its ranks some men of low character and no qualifications, whose sharp practices had not only resulted in injury to the public, but tended to bring the business itself into disrepute. This was the situation when the legislature of 1929 passed the act under consideration. The authority of that body to protect the public who deal with real estate brokers against imposition, dishonesty and fraud is not challenged. The contention is that a classification of real estate brokers which excludes attorneys-at-law and justices of the peace from the statutory regulation and control to be exercised over other persons engaged in that

business is arbitrary and capricious and not grounded upon substantial distinctions of the subjects classified. In view of the purpose of, and the necessity for, the Act of 1929, our opinion is that the classification made by it is founded on real and substantial distinctions. Attorneys-at-law are not in the class at which the statute was aimed, because they had not been the source of the mischief sought to be remedied. Real estate transactions have been carried on by members of the bar for years as a part of their professional duties performed for their clients and they are responsible to the court for their fidelity to their clients in such circumstances. They are admitted to the bar only after they have established that they possess good moral character and have established their qualifications to practice law. The distinction between real estate brokers and lawyers is well recognized and was sufficient reason for exempting the former from the provisions of the act.

As to justices of the peace we think that the lawmakers had equally substantial reasons for excluding them from the provisions of the act. They, like attorneys-at-law, have not been the cause of the abuses at which the act was aimed and are subject to removal from office for misbehavior. A justice of the peace is a constitutional, judicial and public officer: Freiler v. Schuylkill County, 46 Pa. Superior Ct. 58, 63. He is elected by the people and commissioned to perform his duties. These things alone were sufficient ground to warrant the legislature to regard a justice of the peace as a person against whom the public did not require the protection of the act. Our conclusion is that the act should not be condemned because attorneys-at-law and justices of the peace are exempted from its provisions, and that it is a valid exercise of the police power of the State. Whenever the classification is a reasonable one it does not violate Section 1, Article I of our State Constitution: Com. v. Humphrey, supra.

The judgment is affirmed.