Verona *v.* Schenley Farms Co., Appellant.

Argued March 30, 1933.  Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

58

*William R. Scott,* of *Smith, Buchanan, Scott & Gordon,* for appellant.—The Act of 1829, P. L. 1216, prohibits recovery: Luce v. Cook, 227 Pa. 224; Meyer v. Wiest, 250 Pa. 573; Webb v. Rachmil, 75 Pa. Superior Ct. 193.

Plaintiff was not exempted from the requirement of a license by reason of being an alderman: Com. v. Kerr, 3 Pgh. Rep. 348.

*John E. Evans,* with him *Charles J. Margiotti,* for appellee, cited: Felt v. Cook, 95 Pa. 247; Smith v. R. R., 182 Pa. 139; Devers v. Scranton, 308 Pa. 13.

OPINION BY MR. JUSTICE LINN, May 22, 1933:

This appeal is from an order refusing judgment for want of a sufficient reply by plaintiff to defendant's averment of new matter. Plaintiff claims $150,000 for performance of an oral contract. Defendant denied making the contract, and, also, the performance alleged, and, under new matter, in substance averred that plaintiff's statement showed that, in the transaction declared on, he was a real estate broker within the terms of the Real Estate Brokers' License Act of 1929, P. L. 1216, 63 PS, section 431 et seq.; that he had no license as required by section 6, and that suit was prohibited by section 16.

By proceedings, described in Sheets v. Armstrong, 307 Pa. 385, 161 A. 359, the County Commissioners of Allegheny County agreed to purchase from Schenley Farms

Company certain land for a Town Hall. In the present suit, Verona, the plaintiff, avers that the owner of that land, Schenley Farms Company, the present defendant, "sought the services and assistance of [plaintiff] to act as agent for the [defendant] to present to the [commissioners] the special, peculiar and particular advantages of [defendant's land]...... to the end that said real estate might be sold to the county." He also avers that the parties "entered into an oral contract" whereby plaintiff "agreed to use his best efforts in presenting to the [commissioners] the special, particular and peculiar advantages of [defendant's land]......as being the most fitting, suitable and desirable location for the auditorium or 'Town Hall,' then under consideration, as compared with other properties which were being offered and considered by the said County Commissioners, to the end that the same might be sold to the said County of Allegheny for the purposes aforesaid," and that defendant agreed to pay for his services in installments to mature in circumstances which, in view of our conclusion on the principal question, need not be stated.

The Real Estate Brokers' License Act of 1929 is entitled "An act to define real estate brokers and real estate salesmen; and providing for the licensing, regulation, and supervision of resident and nonresident real estate brokers and real estate salesmen and their business."

Briefly, it may be said, the purpose of the act was comprehensive regulation of the business of selling real estate for others. To that end, sellers were divided into two general groups, one requiring a license and the other not. Each group was subdivided into classes; the first group into two classes, (a) real estate brokers and (b) real estate salesmen. The second group was divided into a number of classes, as will appear later. The distinction between the two main groups depended on whether or not a party was engaged in the business of selling real estate for others; parties so engaged are in the first

group. Parties not in the business of selling for others are in the second group. The duty of issuing licenses and otherwise administering the statute was vested in the Department of Public Instruction.

Section 2 defines, in paragraph (a), a real estate broker; in paragraph (b) a real estate salesman; and in paragraph (c) excepts and excludes from those definitions certain classes of real estate brokerage that might otherwise be within the general language of (a) and (b).

Section 6 makes it "unlawful for any person......to engage in or carry on the business, or act in the capacity of a real estate broker, or a real estate salesman, within this Commonwealth, without first obtaining a license as a real estate broker or real estate salesman from the department."

Section 8 requires each broker to pay a license fee of $10, and each real estate salesman a fee of $5. These fees are payable in addition "to any and all other license fees or license taxes imposed, or to be imposed, upon real estate brokers and real estate salesmen by this Commonwealth or any subdivision thereof."

Other sections confer on the department power to revoke licenses in specified circumstances, subject to judicial review. See Young v. Department of Public Instruction, 105 Pa. Superior Ct. 153, 160 A. 151.

Section 12 makes it a misdemeanor to "engage in or carry on the business, or act in the capacity of a real estate broker......within this Commonwealth, without a license......" and provides penalties for conviction thereof.

Section 16 provides: "No action or suit shall be instituted, nor recovery therein be had, in any court of this Commonwealth, by any person......for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this act to others than licensed real estate brokers, unless such person......was duly licensed hereunder as

real estate broker at the time of the doing of such act or the rendering of such service."

In plaintiff's reply to new matter he asserted that he was not required to have a license for two reasons: first, that he was not engaged in the real estate business as broker or salesman during the making and performance of the contract in suit; second, that he was an alderman in the third ward of the City of Pittsburgh and therefore within the exception of justices of the peace stated in section 2 (c).

We agree with the learned court below that plaintiff's averment that he was an alderman did not bring him within the excepted class, justices of the peace; the legislature has uniformly made a distinction between the two offices. But we cannot assent to the view of the learned court on the first point, that the services declared for "were not the services of a real estate broker or salesman but rather those of a promoter."

Plaintiff's averment, in his reply, that, in performing the contract, he was not "engaged in the real estate business," is mere denial of what the statute defines as "acting in the capacity of a real estate broker," a denial which, therefore, amounts to nothing. We all agree that the described negotiation with the county commissioners, in the ordinary and accepted definition of the word "negotiate," was the work of a real estate broker within the meaning of the statute. The legislature was of course familiar with the great variety of real estate brokerage contracts made from time to time, and the definition of. real estate broker must be understood in the light of the common knowledge on the subject; some idea of the varied scope of such contracts may be obtained by examining the cases cited in Shepard's Annotations to Keyes v. Johnson, 68 Pa. 42 (1871) down to Shapira v. Union Trust Co., 306 Pa. 35 (1932), 158 A. 564.

The pleadings disclose that plaintiff was unlicensed, and that the transaction is directly within the prohibitions of sections 6 and 16, which prevent recovery. There

is no averment that can bring him within any of the classes excepted in section 2 (c) which alone prescribes the conditions in which a license is not required.

Section 2, paragraphs (a), (b) and (c) provide (so far as now material) that (a) "The term 'real estate broker' shall include all persons......who, for another and for a fee, commission, or other valuable consideration, shall sell, exchange, purchase, or rent, or shall negotiate the sale, exchange, purchase or rental, or shall offer or attempt to negotiate the sale, exchange, purchase, or rental, or shall hold himself or themselves out as engaged in the business of selling, exchanging, purchasing or renting of any real estate, interest in real estate, the property of another...... One act in consideration of compensation, by fee, commission or otherwise, of buying, selling, renting or exchanging any such real estate of or for another, or attempting or offering so to do ......shall constitute prima facie evidence that the person......so acting or attempting to act, is a real estate broker within the meaning of this act."

"(b) The term 'real estate salesman' shall mean and include any person employed by a licensed real estate broker to sell or offer for sale, to buy or offer to buy, or to negotiate the purchase, sale or exchange of any real estate, or interest in real estate, the property of another, ......"

"(c) Neither of the said terms 'real estate broker' nor 'real estate salesman' shall be held to include within the meaning of this act any person,......who, as owner, shall perform any of the acts with reference to property owned by them, nor any person holding in good faith a duly executed letter of attorney from the actual owner of any real estate, authorizing the sale, conveyance or leasing of such real estate for and in the name of such owner, or the negotiating of any loan, thereon, nor shall they be held to include, in any way, attorneys at law and justices of the peace, nor shall they be held to include any receiver, trustee in bankruptcy, administrator

or executor, or any other person or corporation acting under the appointment or order of any court, or as trustee under the authority of a will or deed of trust, or any banking institution operating under the banking laws of Pennsylvania."

The negotiation conducted by the plaintiff with the Commissioners, was not conducted as an isolated transaction (in the words of the statute) "in good faith [pursuant to] a duly executed letter of attorney from the" defendant, but pursuant to alleged oral authority to conduct a negotiation with the Commissioners "to the end that [defendant's land] might be sold to the County of Allegheny for the purposes aforesaid" as plaintiff avers in his statement; such negotiation brings him within the definition of a real estate broker in section 2 (a). This negotiation, defendant insists, constitutes, under section 2 (a), "prima facie evidence that [plaintiff] was acting or attempting to act as a real estate broker within the meaning of this act." The inquiry, then, is whether the record contains any averment by plaintiff that could be proved in rebuttal of the prima facie effect attributed by the statute to his conduct. What may be shown to rebut the presumption is fully stated in section 2 (c), supra. The statute does not require a license to sell real estate for another by one not a broker, as defined, if the sale is made by a "person holding in good faith a duly executed letter of attorney from the actual owner......
authorizing the sale......"; nor, in such case, will the absence of a license prevent the recovery of compensation, because such transaction is not within sections 6 and 16. But the right to make such unlicensed sales is limited by the legislature to persons who bring themselves within the class. As plaintiff obviously cannot bring himself within any of the excepted classes, he is bound by the effect attributed by the statute to his conduct.

The requirement of a license by a real estate broker goes back many years in this State (Luce v. Cook, 227

Pa. 224, 75 A. 1098) but immediately prior to the Real Estate Brokers' License Act of 1929, the Revenue Act of May 7, 1907, P. L. 175, was applicable.

The obvious purpose of the Act of 1929 is to prevent fraud and public wrong by correcting well recognized mischief theretofore existing. Numerous illustrations of the wrong to be corrected appear in reported decisions of both appellate courts, which, as the matter is familiar, need not be specifically referred to. The legislature concluded that the time had arrived when the subject must be dealt with. The Department of Public Instruction was therefore not only authorized to require information of the fitness of the applicant before issuing a license, but was vested with power, on its own motion, or on written complaint of the character described in section 10 (too long for quotation here) to refuse, suspend or revoke any license. Although the act has been in force only a few years, this provision has been frequently applied.*

In determining the meaning of the act, it is necessary to consider the evils which the act was obviously designed to correct: Provident Life and Trust Co. v. Klemmer, 257 Pa. 91, 93, 101 A. 351. As a statute for the prevention of fraud, it must be liberally construed to effect the purpose: Nolan v. Jones, 67 Pa. Superior Ct.

---

* Young v. Department of Public Instruction, 105 Pa. Superior Ct. 153, 160 A. 151. Among the complaints on which the department has acted, and which indicate the variety of fraud and wrong to be prevented or redressed by the statute, are the following, appearing in reports of proceedings before the department collected by Semenow, Pennsylvania Law of Real Estate Brokerage, page 132 et seq.: Collecting rents without accounting for them; embezzlement of down money; deceiving principal as to identity of buyer; acting as agent for both buyer and seller; misrepresentation by salesman as to rental of property; receiving funds by misrepresentation as to identity of principal; false representations in advertising circulars concerning lots; false statements by broker; false representations made in obtaining money; misrepresentations of condition of title.

430; 263 Pa. 124, 106 A. 235. Plaintiff's contention that the statute is penal and must therefore be strictly construed, overlooks the settled rule that "there is no impropriety in putting a literal construction on a penal clause and a liberal construction on a remedial clause" in the same statute: Com. v. Shaleen, 215 Pa. 595, 64 A. 797. In considering its meaning, it is also important to note that the requirement of the license is in aid of the collection of the revenue payable by brokers pursuant to the Act of 1907, supra. It is settled that "statutes to prevent frauds upon the revenue are considered as enacted for the public good and to suppress a public wrong, and therefore, although they impose penalties or forfeitures, are not to be construed, like penal laws generally, strictly in favor of the defendant; but they are to be fairly and reasonably construed, so as to carry out the intention of the legislature": United States v. Stowell, 133 U. S. 1, 12; United States v. Ryan, 284 U. S. 167.

Though an unlicensed real estate broker, prior to the Act of 1929, could not recover compensation (Luce v. Cook, supra) the fact remained that, if he failed to collect by suit, or if he collected without suit, the State was deprived of revenue properly payable by such broker. The more frequent such transactions were, the greater the loss of revenue. In addition, as a result of the application of the rule, then applied, that it was a question for the jury whether, under the facts of a particular case, a person was carrying on the business of a broker or not (Meyer v. Wiest, 250 Pa. 573, 576, 95 A. 715) different juries would reach different verdicts on substantially the same evidence, with resulting inequality among such persons.

Those evils, prevention of fraud, failure of revenue, discrimination among persons, are in some measure corrected by the Act of 1929. While prior revenue acts, not having for their purpose the comprehensive regulation of real estate brokerage as a business, did not prohibit recovery of compensation for brokerage services ren-

dered by a person without a license, if his business or occupation was not that of a broker, the Act of 1929, regulating such business, specifies precisely how one's real estate may be sold by another. Unless a plaintiff can show himself entitled within one of the classes of authorized persons, he is within the sections prohibiting recovery of compensation. We understand section 2 (a), (b) and (c) to declare that every person engaged as defined (and as the plaintiff states that he was engaged) if even for a single transaction, unless he brings himself within the exceptions mentioned in 2 (c), must have a license; that sections 6 and 16 prevent recovery for services rendered by any person who cannot bring himself within 2 (c). By this construction of the statute, in harmony with the rules of interpretation quoted, all classes of persons are treated alike and the legislation is made effective within its terms.

As there is nothing in the proposed amendment of his reply, which plaintiff asked leave to file in this court, to bring this transaction within any of the exceptions stated in section 2 (c), and, as it is also obvious from the averments in the statement of claim that he can never bring himself within an excepted class, we need not consider what disposition, in other circumstances, might have been made of such application to amend in this court.

In accord with section 17 of the Practice Act, as amended April 22, 1929, P. L. 62, authorizing this court to enter such "judgment as justice may require" we must reverse the order appealed from and here enter judgment for defendant.