421 A.2d 1151

GOLD & COMPANY, INC., a Pennsylvania
Corporation, Appellant,

v.

NORTHEAST THEATER CORPORATION, a foreign corporation; National Amusements, Inc., a foreign corporation; Sumner Redstone, an individual; Western Pennsylvania Company; Eugene F. P. Kelly, an individual; Howard Christner, an individual; and Theodore A. McWilliams, an individual

v.

David J. TINKHAM, an individual.

Superior Court of Pennsylvania.

Argued Nov. 13, 1979.

Filed Aug. 22, 1980.

70

James A. Lewis, Pittsburgh, for appellant.

Paul F. Laughlin, Pittsburgh, for appellees.

Before CERCONE, President Judge, and MONTGOMERY and LIPEZ, JJ.

LIPEZ, Judge:

This is an appeal from a judgment of the trial court awarding appellant $50,000 for breach of contract without interest and costs.

Appellant Gold and Company, Inc. is a Pennsylvania licensed real estate broker. Gold was contacted by Tinkham, a real estate broker licensed in another state, and the two agreed to cooperate in locating and negotiating the purchase of property suitable for Redstone, a client of Tinkham. Gold, through its licensed salesman, Lebovitz, located suitable property, which was owned by appellee Western Pennsylvania Ltd., and introduced the principals of Western Pennsylvania Ltd. to Tinkham. During the initial discussions among Lebovitz, Tinkham and Western Pennsylvania Ltd., a six per cent broker's commission was discussed as being reasonable, but was never firmly agreed upon. Because of a personality clash, Gold withdrew from active negotiation of the transaction. With some assistance from Tinkham, Western Pennsylvania Ltd. and Redstone continued the negotiations. In order to facilitate agreement, Tinkham, without the prior consent of Gold, agreed to

reduce the brokers' commission on the transaction from six per cent, or approximately $80,000, to $50,000. Thereafter, the principals executed a lease agreement with purchase option.

Tinkham and Gold being unable to agree as to how to divide the commission, Gold brought the present breach of contract action against the principals seeking the recovery of a broker's commission based either on six per cent of the purchase price or upon "usual and customary fees." Western Pennsylvania Ltd. admitted liability for the $50,000 commission and denied that any further amounts were due.

■ The lower court concluded that: 1) Tinkham and Gold had entered into a joint venture;[1] and 2) there was a specific agreement between Tinkham and Western Pennsylvania Ltd., which agreement was binding on Gold, whereby the joint venture agreed to accept as a real estate commission the sum of $50,000. Based on that finding of an express contract, the court then entered an order awarding Gold, as one of the joint venturers, and as trustee for the joint venture, the sum of $50,000. The lower court declined to award prejudgment interest, and ordered each party to bear its own costs.

In this appeal, Gold contends that the lower court erred: 1) in finding that Tinkham had authority to bind Gold to a $50,000 commission in light of the fact that Tinkham was not a real estate broker licensed in the Commonwealth of Pennsylvania; 2) in finding that Western Pennsylvania's agreement to pay a six per cent commission was conditional; 3) in finding that Tinkham unconditionally agreed to accept a reduction of commission and that Gold was bound thereby; 4) in not adopting a "usual and customary" theory of damages; and 5) in refusing to allow Gold interest and costs of suit.

1. "A joint venture is an association of persons or corporations, who by contract, express, or implied, agreed to engage in a common enterprise for their mutual profit." *Richardson v. Walsh Const. Co.,* 3 Cir. 1964, 334 F.2d 334, 336. Each joint venturer is both an agent and a principal of the joint venture. 46 Am.Jur.2d, Joint Ventures § 1; See also *McRoberts v. Phelps,* 391 Pa. 591, 599, 138 A.2d 439, 443 (1958).

Gold's first contention is that since Tinkham was not licensed in Pennsylvania as a real estate broker he had no authority to agree to a $50,000 commission. The only authority Gold cites for its position is the Real Estate Brokers License Act.[2] Gold argues that, under the Act, the only person who was authorized to negotiate with the principals regarding the commission was Gold's registered broker, Sanford Gold.

We disagree with Gold's interpretation of the Act. While possession of a Pennsylvania license is a condition precedent to enforcement of a commission agreement by a broker against its principal, 63 P.S. § 446;[3] *Burke v. Israel*, 264 Pa.Super. 286, 399 A.2d 779 (1979), a broker licensed only in another state is not prevented from negotiating a commission or otherwise acting as a broker on behalf of a joint venture which includes a licensed Pennsylvania broker. Such activities are implicitly sanctioned by section 445(a) of the Act[4] which provides that real estate brokers and salesmen licensed in other states under similar legislation may render services and do acts forbidden to other than Pennsylvania licensees and nevertheless be legally compensated for these activities. This compensation must, however, be re-

2. Act of May 1, 1929, P.L. 1216, as amended, 63 P.S. § 431 et seq.

3. § 446 states:
 "No action or suit shall be instituted, nor recovery therein be had, in any court of this Commonwealth by any person, copartnership, association, or corporation for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this act to others than licensed real estate brokers, unless such person, copartnership, association or corporation was duly licensed hereunder as real estate broker at the time of doing such act of the rendering of such service. 1929, May 1, P.L. 1216, § 16; 1945, May 25, P.L. 1023, § 1.

4. 63 P.S. § 445(a), which states:
 It shall be unlawful for any licensed real estate broker, or real estate salesman, to pay any compensation, in money or other valuable thing, to any person other than a real estate broker or real estate salesman licensed under the provisions of this act or under the laws of another state having the same or similar provisions regarding payment of compensation, for the rendering of any service, or the doing of any of the acts by this act forbidden to be rendered or performed by other than licensees.

ceived through the agency of the cooperating Pennsylvania broker, who alone may bring an action for compensation against the principal under section 446.

■ Thus it does not appear that the Real Estate Brokers License Act prohibited Tinkham's actions, nor did it disable him from negotiating on behalf of the brokers' joint venture. The lower court was justified under the evidence in finding that Tinkham, as agent for the joint venture, was authorized to agree, in its behalf, to a commission of $50,000.

■ Gold also challenges the lower court's handling of the issues of costs and prejudgment interest. Despite judgment in Gold's favor, the lower court failed to award costs. "It is a general rule in our judicial system, stemming from the Statute of Gloucester, 6 Edw. 1, c. 1 (1275), that costs inherent in a law suit are awarded to and should be recoverable by the prevailing party. These are the costs of proceeding in court, not those of preparation, consultation, and fees generally." *De Fulvio v. Holst*, 239 Pa.Super. 66, 69, 362 A.2d 1098, 1099 (1976). "At law the general rule is that costs follow as a matter of course, and the court has no discretion to award or deny them." 15 Standard Pennsylvania Practice 584. We see no reason in the present case why the general rule should not have been followed.[5] Therefore, costs should be awarded.

**5.** This case, while originally filed in equity, was properly transferred to the law side prior to trial. Allowance of costs in equity is within the courts sound discretion. *See, Stotsenburg v. Frost*, 465 Pa. 187, 194, 348 A.2d 418, 422 (1975). Pa.R.C.P. No. 1526.

The problem of costs is presently covered by a variety of statutes and rules. See 15 Standard Pennsylvania Practice 553 et seq. The Judicial Code in § 1726 has now made possible the promulgation of a comprehensive set of standards by providing that "[t]he governing authority shall prescribe by general rule the standards governing the imposition and taxation of costs, including the items which constitute taxable costs, the litigants who shall bear such costs, and the discretion vested in the courts to modify the amount and responsibility for costs in specific matters. No such standards have as yet been promulgated by the "governing authority," i. e., "(1) the Supreme Court; or (2) any agency or unit of the unified judicial system exercising a power or performing a duty pursuant to section 1721 (relating to delegation of powers)." 42 Pa.C.S.A. § 102.

■ The next issue relates to the lower court's refusal to award prejudgment interest. The court below declined to award interest to plaintiff Gold, based upon the following reasoning: "Early on in the dispute between plaintiff and defendants, Western Pennsylvania Ltd., et al. admitted that it was obligated in the amount of $50,000 and offered to pay that sum to the plaintiff in full settlement of the case. Declining the proferred sum, the plaintiff demanded a total amount which this court found to be excessive and unrealistic. For these reasons the Court declined to award interest." (Addendum to Opinion of the court below.) The trial court thus apparently approached the question of the award of prejudgment interest as a matter of discretion rather than as a matter of right. In doing so, it erred. In a contract action the award of such interest does not depend upon discretion but is a legal right. *Palmgreen v. Palmer's Garage, Inc.*, 383 Pa. 105, 108, 117 A.2d 721, 722 (1955); *West Republic Mining Co. v. Jones & Laughlins*, 108 Pa. 55, 68 (1884). It must be awarded despite the good faith of the party contesting the claim. For example, *McCornack v. Sharples*, 254 Pa. 541, 99 A. 155 (1916), involved royalty payments held due in installments under a patent license agreement. The lower court refused to award prejudgment interest on the installments on the ground that the refusal to pay had been based upon a good faith difference of opinion. The Supreme Court in reversing stated:

Even when no demand for payment has been made, it has been held that interest should be paid from the time when there should have been an accounting and payment. . . . It is a sound principle, equally applicable in equity or at law, that one who retains money, after it is justly due and payable to another should pay interest for the detention.

254 Pa. 541, 543, 99 A. 155.

■ This rule is applicable despite the fact that the creditor's demands were in excess of the amount due. As stated by Mr. Justice Trunkey, speaking for the Supreme Court in

*West Republic Mining Co. v. Jones & Laughlins*, 108 Pa. 55 (1884):

> In this state it seems to have been long understood that where it is the duty of the debtor to pay the sum he owes, and the creditor demands a greater sum, the debtor can only relieve himself from liability by tendering payment of the debt. A bona fide dispute as to the amount of indebtedness is no bar to the accruing of interest. If a tender of payment falls short of the sum found to be due at the time of tender, interest runs on the whole.

108 Pa. 55, 69.

 The lower court, in the case before us, found the existence of a contract which obligated Western Pennsylvania Ltd. to pay brokers' commissions in the specific amount of $50,000. Western Pennsylvania Ltd.'s subsequent offer to pay Gold $50,000 in full settlement of the case was insufficient to stop the accruing of interest. While a *sufficient* tender may stop the running of interest, the offer of settlement made by Western Pennsylvania Ltd. did not constitute sufficient tender because it did not include interest to the date of tender and because a tender must be paid into court if refused. *See Englehart v. Cassatt*, 305 Pa. 117, 120–1, 157 A. 256 (1931); *Sun Shipbuilding & Dry Dock Co. v. U.S. Lines, Inc.*, 439 F.Supp. 671, 680 (E.D.Pa.1977), *aff'd without opinion* 582 F.2d 1276 (3rd Cir. 1978), *cert. denied*, 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979). Defendants not having made suitable tender, plaintiff is entitled to prejudgment interest from the date payments were due under the contract.

Case remanded to the lower court for the addition of costs and interest to the verdict in accordance with this opinion. In all other respects, the order of the lower court is affirmed.[6]

---

6. Since we uphold the lower court's finding that Tinkham validly contracted for a $50,000 commission on behalf of the brokers' joint venture, it is unnecessary to address Gold's other contentions.