SHANNON & LUCHS COMPANY, and Warren K. Montouri, Inc.

v.

MELLON BANK, N.A., Appellant.

No. 88–3560.

United States Court of Appeals, Third Circuit.

Argued Jan. 9, 1989.

Decided Feb. 23, 1989.

As Amended March 22, 1989.

**578**

Herbert Alan Dubin (argued), Silver Spring, Md., for appellees.

Lawrence E. Flatley (argued), Joshua L. Berger, Reed Smith Shaw & McClay, Pittsburgh, Pa., for appellant.

Before STAPLETON and MANSMANN, Circuit Judges, and HUYETT, District Judge.*

## OPINION OF THE COURT

HUYETT, District Judge.

■ Appellant Mellon Bank, N.A. appeals from summary judgment entered by the district court in favor of appellees Shannon & Luchs Company ("Shannon") and Warren Montouri, Inc., in their action for a real estate commission from Mellon Bank. The primary issue we are called upon to resolve in this appeal is whether a real estate broker who conducts business in Pennsylvania solely through the efforts of an employee who is not licensed as a broker or salesperson under the Pennsylvania Real Estate Licensing and Registration Act, Pub.L. No. 15, § 9, Feb. 19, 1980, 63 Pa.Stat.Ann. §§ 455.101–455.902 (Purdon Supp.1988) [hereinafter, the Act or the 1980 Act], may maintain an action for a real estate commission.

The action arises from an aborted real estate transaction between appellant Mellon Bank and Dr. Laszlo N. Tauber. Dr. Tauber engaged appellees as real estate brokers to represent him in the transaction with Mellon. While Shannon is licensed as a real estate broker in Pennsylvania, neither Warren Montouri, Inc. nor the sole Shannon employee involved in the transaction is licensed under the Act. The district court found that Shannon could maintain a suit for a real estate commission under Pennsylvania law, despite the fact that the sole employee of Shannon involved in this transaction was not licensed under the Act, and that Warren Montouri, Inc. was entitled to share in the commission as a joint venture partner with a licensed broker. Because we find that the district court erred as a matter of law in permitting appellees to maintain the suit for a real estate commission in the circumstances of this case under the Act, we will reverse.

### I.

#### A.

Appellee Shannon is a Delaware corporation located in Washington, D.C., engaged in the business of real estate brokerage. It is a licensed Pennsylvania real estate broker under the Act. Jon W. Barker is a vice-president of Shannon, employed as real estate broker and salesperson. Barker is licensed as a broker in Washington, D.C., and the state of Texas, but not Pennsylvania. Appellee Warren Montouri, Inc. ("Montouri") is a Washington, D.C. corporation, also engaged in the real estate bro-

---

* Honorable Daniel H. Huyett, 3rd, of the United States District court for the Eastern District of Pennsylvania, sitting by designation.

kerage business. Montouri is not licensed as a Pennsylvania real estate broker. Dr. Laszlo N. Tauber ("Tauber") is a real estate investor from Washington, D.C. In early 1983, Tauber engaged the real estate brokerage services of Shannon to locate potential properties for acquisition. Acting for Shannon, Barker began looking for properties for Tauber to purchase in sale-leaseback transactions. Barker eventually contacted Mellon, stating that he had a "back-up" purchaser for a building which Mellon had under agreement of sale to another party. Eventually, Barker was invited to visit with Mellon officials concerning transactions involving other real estate owned by Mellon.

On November 15, 1983, Barker met with Mellon officials in Pittsburgh and discussed a proposed transaction involving the Union Trust Building. Subsequently, on December 9, 1983, Barker wrote to Mellon outlining a proposal which included a provision for Shannon and Montouri to receive a commission of $650,000 from the proceeds of purchase monies. Further negotiations ensued and on February 7, 1984, Mellon offered to sell the building to Tauber if certain renovations would be performed by Tauber after the sale. Among other things, the letter provided that Mellon agreed to pay a real estate commission of $200,000 to Shannon and Montouri. When Tauber was unable to provide evidence of suitable financing on a timely basis to Mellon, Mellon declared the February 7 letter null and void on March 23, 1984.

After further negotiations, on April 6, 1984, Mellon telexed Tauber a proposed letter of intent for Tauber to submit to Mellon. Tauber made some minor revisions and signed the letter ("April 6 letter"). The letter set the price of the building at $8,200,000, payable with an immediate deposit of $1,000,000 and the balance upon closing. Paragraph 7 of the letter provides: "Seller agrees to pay a real estate commission of USD $200,000 to be divided equally between Shannon and Luchs and Warren Montouri. The parties will otherwise agree to save each other harmless on account of such fees." Joint Appendix at 249. Tauber wired $1 million

to Mellon's account on April 9, and Mellon signed the letter as amended on April 12.

For undisclosed reasons, Mellon subsequently exercised its right under the April 6 letter to cancel unilaterally the transaction. Mellon then returned the $1 million deposit with interest to Tauber. Appellees later demanded a commission of $200,000 from Mellon for providing a ready, willing, and able purchaser for the property. Mellon refused the demand.

### B.

On May 5, 1985, Shannon and Montouri filed this action seeking the $200,000 real estate commission from Mellon claiming that Mellon breached the contract formed on April 12, 1984 by refusing to pay the real estate commission. With the essential facts undisputed, the parties filed cross motions for summary judgment. The district court concluded that the April 6 letter was an enforceable contract and that Shannon and Montouri could enforce the contract as intended third party beneficiaries. *Shannon & Luchs Co. v. Mellon Bank, N.A.*, 690 F.Supp. 419, 422–23 (W.D.Pa. 1988). Mellon argued, as it does again on appeal, that because Barker was not licensed under the Act to transact real estate brokerage services in Pennsylvania, Shannon could not sue for a real estate commission. The district court rejected this argument, and also concluded that Montouri was entitled to sue for the commission as a joint venture partner relying on *Gold & Co., Inc. v. Northeast Theater Corp.*, 281 Pa.Super. 69, 74–75, 421 A.2d 1151, 1153–54 (1980). *Shannon & Luchs*, 690 F.Supp. at 423. Based on commerce clause grounds, which the district court raised *sua sponte*, and its conclusion that the parties involved were "substantial and sophisticated men of affairs," the learned district judge construed the Act to permit Shannon and Montouri to maintain this suit, and granted their motion for summary judgment and denied Mellon's. *Id.* at 424. This appeal followed.

On appeal, Mellon challenges the district court's interpretation of the Act and wheth-

er the April 6 letter constitutes an enforceable contract. As Mellon is appealing from a final judgment, our jurisdiction is based on 28 U.S.C. § 1291 (1982). Our review of the district court's grant of summary judgment in favor of appellees is plenary. *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348–49 (3rd Cir.1986). We begin and end with an examination of the effect of the Act on the ability of Shannon and Montouri to maintain an action for real estate commissions under Pennsylvania law. Because we conclude that appellees cannot maintain a suit for real estate commissions under the Act, we do not reach the enforceability of the April 6 letter.

## II.

The Pennsylvania Real Estate Licensing and Registration Act, 63 Pa.Stat.Ann. §§ 455.101–455.902 (Purdon Supp.1988), requires that real estate brokers and salespersons be licensed by the state's Real Estate Commission. The Act repealed the Real Estate Broker's Licensing Act of 1929, Act of May 1, 1929, Pub.L. No. 1216, § 427 (codified at 63 Pa.Stat.Ann. §§ 431–448 (Purdon)) [hereinafter, the 1929 Act], *repealed by* 63 Pa.Stat.Ann. § 455.901 (Purdon Supp.1988). The Act sets forth a comprehensive scheme for obtaining a license to transact the real estate brokerage business in Pennsylvania. It also sets forth in greater detail than the 1929 Act the standards of conduct governing the real estate brokerage profession. *See, e.g.,* 63 Pa.Stat.Ann. § 455.604.

Under the Act, a civil suit for the recovery of compensation for doing any service which is prohibited under the Act may not be brought by anyone not a licensed broker or salesperson.[1] Section 201 of the Act defines the terms "broker" and "salesperson" as follows:

"Broker." Any person who, for another and for a fee, commission or other valuable consideration:

(1) negotiates with or aids any person in locating or obtaining for purchase, lease or acquisition of interest in any real estate;

(2) negotiates the listing, sale, purchase, exchange, lease, time share and similarly designated interests, financing or option for any real estate;

. . . .

(4) represents himself as a real estate consultant, counsellor, house finder;

(5) undertakes to promote the sale, exchange, purchase or rental of real estate: Provided, however, That this provision shall not include any person whose main business is that of advertising, promotion or public relations; or

(6) attempts to perform any of the above acts.

. . . .

"Salesperson." Any person employed by a licensed real estate broker to list for sale, sell, or offer for sale, to buy or offer to buy or to negotiate the purchase or sale or exchange of real estate or to negotiate a loan for real estate or to lease or rent or offer to lease, rent or place for rent any real estate or collect or offer or attempt to collect rent for the use of real estate for or in behalf of such real estate broker. No person employed by a broker to perform duties other than those activities as defined herein under "broker" shall be required to be licensed as a salesperson.

63 Pa.Stat.Ann. § 455.201.[2]

Appellees do not contest that they were acting as "brokers" within the meaning of the Act, that Barker was the sole employee of either firm to act for them, or that

---

**1.** Section 302 of the Act provides in part:

No action or suit shall be instituted, nor recovery be had, in any court of this Commonwealth by any person or compensation for any act done or service rendered, the doing or rendering of which is prohibited under provisions of this act by a person other than a licensed broker, salesperson . . ., unless such person was duly licensed and registered hereunder as a broker or salesperson at the time of offering to

perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service.

63 Pa.Stat.Ann. § 455.302.

**2.** This provision also defines the term "associate broker" as "A broker employed by another broker." 63 Pa.Stat.Ann. § 455.201.

Barker was acting as a broker or salesperson as those terms are defined by the Act during the course of the transaction with Mellon. Although the plain language of section 302 would seem to preclude their suit, Shannon and Montouri contend, as the district court concluded, that we should extend two judicially created exemptions from the application of prior Pennsylvania real estate licensing acts to the 1980 Act. Neither we nor the parties have located any decisions in the nine year history of the 1980 Act in which a Pennsylvania court has been faced with this question. Therefore, we must predict how the Pennsylvania courts would apply the Act were they faced with this question.

Under the 1929 Act, it was settled law that a suit for a real estate commission could not be maintained by a person who is not licensed under the Act. *Schultz v. Palmer Welloct Tool Corp.*, 115 F.Supp. 939 (W.D.Pa.), *aff'd*, 207 F.2d 652 (3rd Cir. 1953); *Kusche v. Vulcanized Rubber & Plastics Co.*, 416 Pa. 364, 206 A.2d 40 (1965); *Verona v. Schenley Farms Co.*, 312 Pa. 57, 167 A. 317 (1933); *Burke v. Israel*, 264 Pa.Super. 286, 290, 399 A.2d 779, 781 (1979); *Harrison v. Soffer*, 221 Pa.Super. 275, 289 A.2d 752 (1972); *Alford v. Raschiatore*, 163 Pa.Super. 635, 63 A.2d 366 (1949); *Newhouse v. Dipner*, 118 Pa. Super. 101, 180 A. 88 (1935). Under the 1929 Act and its predecessors, there were two exceptions to this principle. Under the 1929 Act, Pennsylvania courts recognized that a broker licensed in a state other than Pennsylvania could form a joint venture with a licensed Pennsylvania real estate broker, and maintain a suit for a commission from the activities of the joint venture. *Gold & Co., Inc. v. Northeast Theater Corp.*, 281 Pa.Super. 69, 421 A.2d 1151 (1980). Second, in the distant past under the predecessors to the 1929 Act, the Pennsylvania Supreme Court permitted an out-of-state broker to engage in an "isolated

transaction," and maintain a suit for a commission from that transaction. *Ressler v. Marks*, 308 Pa. 205, 162 A. 666 (1932). Mellon urges that these exemptions were founded upon statutory provisions that no longer exist and, therefore, have no validity under the 1980 Act. After careful examination of the history of these exemptions, we agree with Mellon that the exemptions no longer exist under Pennsylvania law.

### A.

Even before the enactment of the 1929 Act, Pennsylvania barred unlicensed real estate brokers from recovering commissions. *See, e.g., Luce v. Cook*, 227 Pa. 224, 75 A. 1098 (1910). Before the enactment of the 1929 Act, a license fee was required to be paid as a revenue measure. *See* The Revenue Act of May 7, 1907, Pub.L. No. 15, § 1, *repealed by* Act of May 7, 1943, Pub. L. No. 237, § 5; *Chadwick v. Collins*, 26 Pa. 138, 139 (1856). The original rationale for licensing brokers in Pennsylvania was to obtain revenue from the issuance of brokers' licenses. *Id.* The isolated transaction exemption was created as a means to allow those not engaged in the real estate brokerage business to avoid being taxed under the revenue statutes as real estate brokers.[3] *See Meyer v. Weist*, 250 Pa. 573, 95 A. 715 (1915). *Meyer* held that an individual not engaged in the real estate brokerage business could recover a commission for a single transaction, but, if more than one transaction had occurred, the question of whether the individual was engaged in the brokerage business within the Commonwealth was for jury determination.

Appellees mistakenly urge that the isolated transaction doctrine continued to be viable for individuals engaged in the real estate brokerage business in another state after the 1929 Act was adopted, citing *Res-*

---

**3.** The *Chadwick* court, which is the first statement of the isolated transaction exemption, stated the purpose of the exemption.

In making the use or exercise of the business or occupation of real estate broker in [the state] a source of revenue to the Commonwealth, the legislature did not intend to pre-

vent a person whose business or occupation was not that of a real estate broker from receiving compensation for services rendered in buying or selling real estate belonging to another.

*Chadwick*, 26 Pa. at 139.

sler v. Marks, 308 Pa. 205, 162 A. 666 (1932). In Ressler, a New Jersey real estate broker sued on an oral contract for a leasing commission of 2% of the aggregate rentals of the property for which plaintiff claimed to have secured a tenant for a 21–year lease term. Defendants moved for judgment claiming that plaintiff was not licensed as a broker in Pennsylvania, and had not paid the mercantile broker's license fee required by the Revenue Act of May 7, 1907, Pub.L. No. 175, § 1 (repealed 1943). The lower court granted defendants' motion for summary judgment holding that

all brokers, no matter from whence they hail, must pay a tax if they do any business in this state, and that, if a person is actually engaged in business as a broker, the procuring of a license is a condition precedent to the lawful transaction of business, and consequently to the recovery of compensation for services....

Ressler, 308 Pa. at 208, 162 A. at 666.

The Pennsylvania Supreme Court found the lower court's conclusion that plaintiff was engaged in the real estate brokerage business in Pennsylvania based solely on the allegations of the pleadings was erroneous. The Court held that the pleadings were an insufficient basis to award judgment for the defendants stating:

[I]t cannot be said that [plaintiff] was carrying on a brokerage real estate business here, or that the present transaction was not the only one in which he engaged in this state. We are not prepared to hold that a single transaction would subject him to the tax here or require him to take out a license before he could recover for his services.

Id.

■ The language of this statement appears to support appellees' position. However, it is not clear from the opinion whether the case was decided under the 1929 Act, or the Revenue Act of 1907. We believe that the language of the 1929 Act and other decisions under the 1929 Act make it clear that the isolated transaction exemption was not available to real estate brokers from other states after the 1929 Act was adopted.

Section 2(a) of the 1929 Act defined the term "broker" as

all persons, copartnerships, associations, and corporations, foreign and domestic, who, for another and for a fee, commission, or other valuable consideration, shall sell exchange, purchase, or rent, or shall negotiate the sale, exchange, purchase, or rental, or shall offer or attempt to negotiate the sale, purchase, or rental, *or shall hold himself or themselves out as engaged in the business of selling, exchanging, purchasing, or renting of any real estate, interest in real estate, the property of another, whether the same shall be located within the State of Pennsylvania or elsewhere....* One act in consideration of compensation, by fee, commission, or otherwise of buying, selling, renting or exchanging any such real estate for or of another, or attempting or offering to do so ... shall constitute prima facie evidence that the person, copartnership, association, or corporation, so acting or attempting to act, is a real estate broker within the meaning of this act.

63 Pa.Stat.Ann. § 432(a) (repealed 1980) (emphasis added).

As early as 1933, the Pennsylvania Supreme Court concluded that the right to recover a commission for real estate transactions by one not licensed under the 1929 Act was limited to either those persons who were not brokers as defined by the 1929 Act, or those excepted under section 2(c) of the 1929 Act. 63 Pa.Stat.Ann. § 432(c) (repealed 1980). "The statute does not require a license to sell real estate for another by one not a broker, as defined, if the sale is made by a [person exempted by section 2(c)]...." *Verona v. Schenley Farms Co.*, 312 Pa. 57, 63, 167 A. 317, 319 (1933). After reviewing the legislative purpose of the 1929 Act, the court held "We understand section 2(a), (b), and (c) to declare that every person engaged as defined ... if even for a single transaction, unless he brings himself within the exceptions mentioned in section 2(c), must have a license; that [other sections] prevent recovery for services rendered by any person

who cannot bring himself within section 2(c)." *Id.* at 66, 167 A. at 320.

In the wake of the 1929 Act, and *Verona*, the isolated transaction exemption was only applicable, therefore, to those not engaged as brokers in real estate. *See Downing v. Marks*, 318 Pa. 289, 292, 178 A. 676, 677 (1935) ("Where the party did not hold himself out as a real estate broker, it has long been the law of this State that he may recover under his contract though he was not licensed as a broker."); *cf. Roberts v. Ross*, 344 F.2d 747, 750 & n. 2 (3rd Cir.1965) (stating that, unlike the Virgin Islands law, Pennsylvania had "enacted legislation expressly prohibiting the sale of real estate without first obtaining a broker's license and precluding the recovery of real estate commission from an owner by an unlicensed agent."). As Mellon argues, we believe these cases support the proposition that the isolated transaction was not available to an out-of-state broker under the 1929 Act.

## B.

Under the 1980 Act, it is unlawful for any person to act as a broker or salesperson as those terms are defined by the Act "without first being licensed or registered as provided in [the Act], unless he is exempted from obtaining a license ... under the provisions of section 304." 63 Pa.Stat. Ann. § 455.301. It is undisputed that neither Shannon nor Montouri qualifies for any of the exclusions provided in section 304, 63 Pa.Stat.Ann. § 455.304, and that they were acting as brokers, or in Barker's case, as a salesperson or associate broker,

as those terms are defined in section 201 of 1980 Act. 63 Pa.Stat.Ann. § 455.201.

In the alternative as between Montouri and Shannon, and Barker and Shannon, appellees maintain that they may bring this suit because Shannon is properly licensed under the 1980 Act. Appellees claim that a joint venture existed among Shannon, Montouri and Barker. Because Barker was licensed as a broker in Washington, D.C. and Texas, appellees suggest that a joint venture was formed between Shannon and Barker, and that Barker was acting on behalf of the venture when he represented Tauber in the proposed transaction.[4]

The joint venture exemption is found in *Gold & Co., Inc. v. Northeast Theater Corp.*, 281 Pa.Super. 69, 421 A.2d 1151 (1980). In *Gold*, Tinkham, a real estate broker licensed in another state, retained Gold, a Pennsylvania broker and its licensed salesperson Lebovitz, to locate a suitable coal property for Tinkham's client, Redstone. Lebovitz, Tinkham and the seller agreed that a 6% commission on any sale would be reasonable. Thereafter, Gold withdrew from the negotiations because of a personality clash. *Id.* at 72, 421 A.2d at 1152. The remaining parties reached a lease agreement, but reduced the commission to 3.5% without Gold's consent. When Tinkham and Gold could not agree on how to split the commission, Gold sued for breach of contract. The lower court found that Gold and Tinkham had entered into a joint venture, and that Tinkham's agreement to accept a lower commission bound Gold. *Id.* at 73, 421 A.2d at 1153. On appeal, Gold argued that the Licensing Act

---

**4.** In *Wilkins v. Heebner*, 331 Pa.Super. 491, 480 A.2d 1141 (Pa.Super.1984), the court discussed what was necessary under Pennsylvania law to find a joint venture that entitled a non-licensed broker to a real estate commission. First, "[w]hat constitutes a joint venture is a matter of law, but whether a joint venture exists is generally a question of fact." *Id.* at 496, 480 A.2d at 1144. Second, "[i]n Pennsylvania the law is clear that in order for a joint venture to come into existence, there must be a showing of a joint proprietary interest and a right of mutual control of the subject matter of the enterprise." *Id.* at 497, 480 A.2d at 1144.

It is unclear from the record what agreement, beyond one letter from Barker to Montouri dis-

cussing financial aspects of the proposed transaction, serves as the basis for the district court's conclusion that a joint venture existed among the brokers. Certainly, it could be assumed that an agreement existed between Shannon and Barker by virtue of the employment relationship. However, there is no apparent basis for concluding that a joint venture existed between Barker and Shannon on the one hand, and Montouri on the other. Our conclusion that the joint venture exemption has no statutory basis under the 1980 Act, and is, therefore, unavailable to appellees under the facts of this case obviates the need to examine this issue further.

prevented Tinkham from receiving any commission or binding Gold to the lower amount. The Superior Court rejected Gold's argument stating:

> While the possession of a Pennsylvania license is a condition precedent to enforcement of a commission agreement by a broker against its principal, ... a broker licensed only in another state is not prevented from negotiating a commission or otherwise acting as a broker on behalf of a joint venture which includes a licensed Pennsylvania broker. *Such activities are implicitly sanctioned by section 445(a) of the Act which provides that real estate brokers and salesmen licensed in other states under similar legislation may render services and do acts forbidden to other than Pennsylvania licensees and nevertheless be legally compensated for these activities.* This compensation must, however, be received through the agency of the cooperating Pennsylvania broker, who alone may bring an action for compensation against the principal under section 446.

*Id.* at 74, 421 A.2d at 1153–54 (emphasis added).

The highlighted portion of this passage demonstrates that the statutory basis for the joint venture exemption is found in section 15 of the 1929 Act. That section provides

> It shall be unlawful for any licensed real estate broker, or real estate salesman, to pay any compensation, in money or other valuable thing, to any person *other than a real estate broker or real estate salesman licensed* under the provisions of this act or *under the laws of another state having same or similar provisions regarding payment of compensation,* for the rendering of any service, or the doing of any of the acts by this act forbidden to be rendered or performed by other than licensees.

63 Pa.Stat.Ann. § 445(a) (repealed 1980).

■ After careful scrutiny of the 1980 Act, we are unable to locate any similar provision under the 1980 Act, and appellees have not suggested any similar statutory basis for concluding the joint venture theory remains viable under the 1980 Act. Moreover, the provisions of the 1980 Act establish an expedited procedure for brokers with proper qualifications from other states to obtain a Pennsylvania broker's license. 63 Pa.Stat.Ann. § 455.602 ("Any nonresident of this Commonwealth, who meets the equivalent experience requirements and other standards and qualifications, as [the Pennsylvania Real Estate] Commission shall by rule provide, shall qualify for a license under this act."). The lack of any language in the 1980 Act similar to that of section 445(a) of the 1929 Act and the existence of an expedited procedure for qualified out-of-state brokers to obtain a Pennsylvania broker's license, leads us to the conclusion that the joint venture exemption no longer exists under the 1980 Act.

### C.

In summary, we conclude that neither the isolated transaction exemption nor the joint venture exemption remains viable under the 1980 Act. The one issue which remains to be addressed is the effect of Barker's participation in the transaction upon Shannon's ability to bring a suit for the commission in its own right.

It is undisputed that Barker was the sole Shannon employee involved in the negotiations of the proposed transaction, and that Barker was acting as a salesperson or an associate broker as defined in section 201 of the 1980 Act. Section 301 of the Act makes it unlawful for a person "acting in the capacity of a broker or salesperson" to engage in business without first being licensed or registered under the Act, unless exempted by section 304. 63 Pa.Stat.Ann. § 455.301. It is also undisputed that Barker would not qualify for an exemption under section 304. Section 302 bars any suit for real estate commission by any person other than a properly licensed salesperson or broker. Section 603 prohibits the employment by a licensed broker of an unlicensed salesperson or associate broker. 63 Pa.Stat.Ann. § 455.603. Given this clear statement by the Pennsylvania legislature, we hold that a properly licensed broker

cannot maintain a suit for services performed by a salesperson or associate broker who must be licensed under the Act and is not. Any other result would countenance an outcome clearly contrary to the provisions of the Act.

### III.

Under the 1980 Act, appellees may not maintain a suit for a real estate commission. Neither the isolated transaction nor the joint venture exemptions remains viable for brokers under the Act. Thus, examination of Mellon's contentions concerning the enforceability of the April 6 letter is unnecessary. Accordingly, we reverse the district court's judgment and remand with instructions that judgment be entered in favor of Mellon.